# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2614

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Lester B. Thompson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 15, 2005
Filed: April 14, 2005

_____

Before WOLLMAN, McMILLIAN, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Lester B. Thompson appeals from the sentence imposed following his guilty plea to being a criminal in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). We vacate and remand for resentencing.

## I.

Thompson pled guilty pursuant to a written plea agreement, in which the Thompson and the government stipulated that "the applicable guideline section for the offense of conviction is § 2K2.1(a)." Thompson's base offense level under that section was 14. The probation officer based her sentencing recommendation in the

presentence investigation report on section 2K2.1(c). That provision applies "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense." When the condition precedent is met, section 2K2.1(c) requires the application of section 2X1.1 if the resulting offense level is greater than that calculated under section 2K2.1(a). Section 2X1.1 in turn requires the application of the guidelines provision that corresponds to the offense referenced in section 2K2.1(c).

The probation officer recommended that the district court find that Thompson possessed a firearm in connection with the uncharged felony offenses of first degree assault and armed criminal action. The guideline corresponding to these offenses is section 2A2.2, which resulted in an offense level of 20 (a base level offense of 23 less two points for acceptance of responsibility and one point for cooperation) and a sentencing range between 33-41 months. In contrast, Thompson's offense level under section 2K2.1(a) was 12 (a base level offense of 14 less two points for acceptance of responsibility), which would have given him a sentencing range between 10-16 months. Because the offense level under section 2A2.2 was greater than the offense level under section 2K2.1(a), the probation officer recommended that the district court sentence Thompson under section 2K2.1(c) instead of under section 2K2.1(a).

Thompson's attorney objected at sentencing to the probation officer's reliance on section 2K2.1(c) and informed the district court that she had witnesses whose testimony would "have to do with how the guidelines are applied." The district court then asked the prosecutor, "Mr. Jones, anything you need to say before we hear their evidence?" The prosecutor responded by arguing that the facts to which Thompson had stipulated established that he had committed felony assault ("those are things that the defendant admitted in the plea agreement, which I think in and of themselves establish felonious assault"). Thompson's attorney objected that the prosecutor's

argument in support of a sentence exceeding that allowed under section 2K2.1(a) violated the plea agreement. The district court then asked the prosecutor whether he felt that he was bound by the plea agreement, to which the prosecutor responded:

> [T]he plea agreement says that the Court and probation office [are] not bound by any of our stipulations. As to whether or not I can argue or point out to the Court what the probation officer has found and what—because that's where I was heading next was to say what the unobjected factual statements were that were in the [presentence investigation report] and how that would support also the charge of felonious assault. The Court is aware of those things. I can certainly, if the Court asks me, I think I certainly have an obligation to advise the Court of what the facts are.

Sent. Tr. at 5-6. The district court sentenced Thompson under section 2K2.1(c) to thirty-three months' imprisonment, seventeen months more than the maximum sentence that he could have received under section 2K2.1(a).

## II.

Thompson asserts that the government breached the plea agreement. We review *de novo* issues pertaining to the interpretation and enforcement of a plea agreement. United States v. DeWitt, 366 F.3d 667, 669 (8th Cir. 2004). Plea agreements are contractual in nature and should be interpreted according to general contractual principles. Id. Where a plea agreement is ambiguous, the ambiguities are construed against the government. United States v. Andis, 333 F.3d 886, 890 (8th Cir. 2003) (en banc). Allowing the government to breach a promise that induced a guilty plea violates due process. United States v. Van Thournout, 100 F.3d 590, 594 (8th Cir. 1996). We also agree with the Fourth Circuit that "with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of

justice in a federal scheme of government." United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986) (internal citation and quotation marks omitted).

## A.

The government cites United States v. Pompey, 121 F.3d 381 (8th Cir. 1997), in support of its argument that the prosecutor did not breach the agreement. In Pompey, the government and defendant reached a plea agreement that included the statement that "there [were] no adjustments to be made for obstruction, pursuant to § 3C1.1 [of the sentencing guidelines]." Id. The government nonetheless provided information to the probation officer preparing the presentence report that the defendant had put pressure on his sister not to testify against him, and this information eventually furnished the basis for the district court's upward adjustment. Id. A panel of our court concluded that the government had not breached the agreement. Id. at 382. The panel cautioned that "it is not to be supposed that parties to a plea agreement would contract to keep information relevant to sentencing from the court." Id.

When Pompey was decided in 1997, Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure provided that a prosecutor could "agree that a specific sentence is the appropriate disposition of the case" in reaching a plea agreement with a defendant. Fed. R. Crim. P. 11(e)(1)(C) (1997). In 1999, that provision was amended to provide that a prosecutor could "agree that a specific sentence *or sentencing range* is the appropriate disposition of the case, *or that a particular provision of the Sentencing Guidelines, or policy statement or sentencing factor is or is not applicable to the case*." Fed. R. Crim. P. 11(e)(1)(C) (1999) (emphasis added).[1] The amended provision also specified that "[s]uch a plea agreement is binding on the court once it

---

[1]The Federal Rules of Criminal Procedure were again amended in 2002. Language similar to that contained in the 1999 version of Rule 11(e)(1)(C) is now found in Fed. R. Crim. P. 11(c)(1)(C) (2005).

is accepted by the court." Id. The Advisory Committee Notes accompanying the 1999 amendments indicate that subsection (e) of Rule 11 was amended "to reflect the impact of the Sentencing Guidelines on guilty pleas." Id. (Advisory Committee Notes). The Committee observed that "it [had] become clear that the courts [had] struggled with the subject of guideline sentencing vis a vis plea agreements, entry and timing of guilty please, and the ability of the defendant to withdraw a plea of guilty." Id.

We believe that the 1999 amendments to Rule 11, which provide greater discretion for bargaining in plea agreements, expressly sanction the negotiation of a plea agreement such as that entered into here, notwithstanding Pompey's pronouncement to the contrary. Cf. DeWitt, 366 F.3d at 669 (concluding that plea agreement precluded prosecutor from introducing evidence of increased drug quantity absent direction from the district court to do so).

**B.**

The plea agreement makes clear that the government was aware of the facts that the district court ultimately relied upon to find that Thompson had committed a felonious assault. In its discretion, the government decided not to charge Thompson with this conduct and limited the applicable guidelines to those that would not account for the uncharged conduct. The government could have offered as a term of the plea agreement that section 2K2.1 would be the applicable guideline section for the offense of conviction, without specifying a particular paragraph under that section. It offered instead the narrower provision of section 2K2.1(a). This became a bargained-for term of the agreement. Although not binding on the probation officer or the district court, the plea agreement obligated the prosecutor, at a minimum, to refrain from advocating against the applicability of section 2K2.1(a). The prosecutor's argument to the district court that Thompson's factual stipulations supported felonious assault, prior to any request by the district court for such information, was essentially an argument that section 2K2.1(c)(1) should apply to

Thompson's sentence. In essence, then, the prosecutor was arguing for the negation of the applicability of section 2K2.1(a).

In DeWitt, the government and the defendant entered into a plea agreement specifying that "[t]he amount of pseudoephedrine to be used to calculate the sentencing guidelines is 1.12 grams." Id. at 668. The probation officer recommended a base level offense premised on the defendant's being accountable for 53.02 grams of pseudoephedrine, which included the 1.12 grams identified in the plea agreement and an additional 51.9 grams related to conduct for which the defendant was not charged. Id. at 669. At sentencing, the prosecutor introduced evidence to establish the larger drug quantity set forth in the presentence investigation report. Id. The prosecutor stated, "I understand that the parties had an understanding of what they believed the amount would be, and that's listed further in the plea agreement, but that amount does not prevent any party from presenting additional information. And that's what the government has done today." Id. We concluded that the prosecutor's conduct constituted a breach of the plea agreement. Id. at 669-70.

The prosecutor's actions here are similar to those taken by the prosecutor in DeWitt. Although nothing in the record suggests that the prosecutor here acted in bad faith, we conclude that his unrequested advocacy of the application of a guideline provision that undermined the applicability of section 2K2.1(a) breached the plea agreement.

Because we conclude that the government breached the plea agreement, we vacate Thompson's sentence and remand to the district court for resentencing before

a different judge.  <u>Id.</u> at 672.[2]  The reassignment "is in no sense to question the fairness of the sentencing judge."  <u>Id.</u>

_____

[2]Because our resolution of this case requires us to remand for resentencing under the now-advisory sentencing guidelines, we need not address Thompson's constitutional argument that his sentence was increased based upon facts not found by a jury beyond a reasonable doubt under the sentencing guidelines as they existed prior to <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).