# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————

No. 04-2312

————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| John F. Stobaugh, | * | |
| | * | |
| Appellant. | * | |

————————

Submitted: March 17, 2005
Filed: August 25, 2005

————————

Before RILEY, BOWMAN, and GRUENDER, Circuit Judges.

————————

GRUENDER, Circuit Judge.

John F. Stobaugh ("Stobaugh") pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1] sentenced Stobaugh to 110 months' imprisonment. Stobaugh appeals his sentence, arguing that the Government breached his plea agreement during his sentencing hearing and that the district court erred in calculating his criminal history

————————

[1] The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

points and in applying the cross-reference in United States Sentencing Guidelines § 2K2.1(c). Stobaugh also contends that his sentence, pronounced under mandatory Sentencing Guidelines, violates *United States v. Booker*, 125 S. Ct. 738 (2005). For the reasons discussed below, we affirm.

## I.    Background

On December 23, 2003, Stobaugh pleaded guilty to a one-count indictment that charged him with being a convicted felon in possession of a "loaded Mossberg 12 gauge pump shotgun" in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The plea agreement as originally negotiated stated that, "[i]n addition to the Mossberg 12 gauge shotgun located in the defendant's bedroom, a total of 58.84 grams of methamphetamine and 9.11 grams of marijuana were located in the defendant's garage." The plea agreement also contained the following provisions:

> 9.   The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant including the entirety of the defendant's criminal activities. The defendant understands that these disclosures are not limited to the count to which the defendant pled guilty. . . . The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement.
>
> 10.  With respect to the application of the Sentencing Guidelines to this case, the parties agree as follows:
> > a. The applicable Guideline section for the offense of conviction is U.S.S.G. § 2K2.1.
> > b. The base offense level is 14. U.S.S.G. § 2K2.1(a)(6).
> > c. [The government will file a motion stating that Stobaugh is entitled to a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.]

. . .

 e. The defendant understands [that the guidelines estimate] does not bind the Court or the United States Probation Office . . . .

 . . .

11. There are no agreements between the parties with respect to any Sentencing Guideline issues other than those specifically listed in paragraph 10, and its subsections and paragraph 5 [stating that the government would recommend a sentence at the low end of the applicable guidelines range as determined by the court]. The parties agree that the guideline calculations set forth in paragraph 10 are only estimates and do not bind the parties. As to any other issues which may be found to exist, the parties are free to advocate their respective positions at the sentencing hearing.

At Stobaugh's change-of-plea hearing, Stobaugh and the Government agreed to strike the reference to the methamphetamine and marijuana from the factual stipulation. The plea agreement was otherwise unaltered. When the district court inquired for the record why the plea agreement was in Stobaugh's best interests, Stobaugh's counsel replied, "In addition to the anticipated benefits of receiving a reduction for acceptance of responsibility, there is also an agreement in the plea agreement that the government will recommend a sentence at the low end of whatever applicable guideline range is determined." The district court accepted the plea agreement.

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR listed as relevant conduct that Stobaugh possessed with intent to distribute 58.81 grams of methamphetamine found in his garage during his arrest, and that he possessed the firearm in connection with that offense. Therefore, the PSR recommended that the district court apply U.S.S.G. § 2K2.1(c). Under § 2K2.1(c), a defendant's offense level is determined by applying U.S.S.G. § 2X1.1 to the connected offense if the resulting offense level would be higher than the base offense level found in § 2K2.1(a). For a connected offense of possession with intent

to distribute methamphetamine, § 2X1.1 requires the offense level to be calculated under U.S.S.G. § 2D1.1. Applying § 2D1.1 to the 58.81 grams of methamphetamine with the specific offense characteristic of possession of the firearm, the PSR calculated Stobaugh's offense level to be 28. Subtracting two levels for acceptance of responsibility and one level for timely notification of his intent to plead guilty pursuant to § 3E1.1, the PSR recommended that Stobaugh's total offense level should be 25. Stobaugh filed an objection to the application of the § 2K2.1(c) cross-reference and the findings supporting it.

Prior to sentencing, the Government informed Stobaugh that it intended to have a witness present at Stobaugh's sentencing hearing to support the PSR's recommendations regarding § 2K2.1(c). In response, Stobaugh filed a "Motion to Enforce the Plea Agreement." In that motion Stobaugh argued, "For the government to present evidence of a base offense level higher than it stipulated to in the plea agreement is a violation of the contractual nature of the plea agreement." The motion requested the district court to "specifically enforce Paragraph 10 of the plea agreement."

The Government secured the presence of a law enforcement officer at Stobaugh's sentencing hearing to testify in support of the PSR's finding that Stobaugh possessed the firearm in connection with a drug offense. The district court began the sentencing hearing by considering whether the presentation by the Government of evidence that would support the application of the § 2K2.1(c) cross-reference offense level of 28 would breach the plea agreement's specific reference to the § 2K2.1(a) base offense level of 14. Without expressly resolving that question, the district court decided to preempt the Government from initiating any arguments to support the cross-reference by ordering the Government to present the witness at the court's direction. Stobaugh objected that because the Government arranged on its own initiative to have the witness present, the district court would not really be hearing the evidence on the court's own initiative. The district court gave Stobaugh

the option of rescheduling the sentencing hearing. However, the district court stated that it would need to hear evidence regarding the PSR's findings on the methamphetamine and other indications of drug trafficking regardless of how or when the witness was produced. Stobaugh elected to continue with the hearing.

After the presentation of evidence supporting the application of the § 2K2.1(c) cross-reference, the district court decided to follow the recommendation of the PSR. With a resulting total offense level of 25 and a criminal history category of VI, Stobaugh was sentenced to 110 months' imprisonment, the low end of the applicable guidelines range. On appeal, Stobaugh argues that the presentation of evidence supporting the § 2K2.1(c) cross-reference breached his plea agreement and that the breach entitles him to resentencing before a different district court judge. Stobaugh also contends that the district court erred in calculating his criminal history points and in applying the cross-reference. Finally, Stobaugh argues that he should be resentenced in light of *Booker*.

## II. Discussion

### A. Breach of the Plea Agreement

Stobaugh contends that the presentation of evidence supporting the § 2K2.1(c) cross-reference offense level of 28, rather than the § 2K2.1(a) base offense level of 14, breached his plea agreement. We disagree.

We review issues pertaining to the interpretation and enforcement of a plea agreement de novo. *United States v. Has No Horses*, 261 F.3d 744, 750 (8th Cir. 2001). "Plea agreements are contractual in nature, and should be interpreted according to general contract principles." *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir. 2004). "[W]here a plea agreement is ambiguous, the ambiguities are construed against the government." *United States v. Andis*, 333 F.3d 886, 890 (8th

Cir. 2003) (en banc) (quoting *Margalli-Olvera v. INS*, 43 F.3d 345, 353 (8th Cir. 1995)). Any promise made by the Government that constitutes a significant part of the defendant's inducement or consideration for making the plea agreement must be fulfilled to satisfy due process. *Santobello v. New York*, 404 U.S. 257, 262 (1971); *United States v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996).

Stobaugh argues that our decision in *DeWitt* compels us to find a breach in this case. In *DeWitt*, the Government and the defendant stipulated to a specific drug quantity in the plea agreement, indicating their agreement to hold the defendant responsible only for that amount. 366 F.3d at 668-70. We held that the Government breached the plea agreement when it initiated the presentation of evidence for the purpose of attributing to the defendant a greater drug quantity. *Id.* Although the plea agreement entitled the government to offer evidence of uncharged relevant conduct, we held that such a general provision could not be read to override the specific provision to recommend only a certain total drug quantity for guidelines calculation purposes. *Id.* Furthermore, in *United States v. Thompson*, 403 F.3d 1037 (8th Cir. 2005), published after oral arguments were completed in the instant case, we relied on *DeWitt* to find a breach where the plea agreement specified a base offense level of 14 under § 2K2.1(a), but the Government advocated application of the § 2K2.1(c) cross-reference at the sentencing hearing—a situation very similar to the one before us today. *Thompson*, 403 F.3d at 1039-41.

In contrast to *DeWitt* and *Thompson*, however, the language of the plea agreement in the instant case permitted the Government's actions at the sentencing hearing. Stobaugh's proffered reading of the plea agreement—that it prevented the Government from advocating any offense level higher than the § 2K2.1(a) base offense level of 14 specified in Paragraph 10—is not reasonable. Paragraph 11 of the plea agreement states that the "parties agree that the guideline calculations set forth in paragraph 10 are only estimates and *do not bind the parties*" (emphasis added). No similar language was cited in the plea agreements in *DeWitt* or *Thompson*. There can

be no clearer language to show that the Government was not bound to the § 2K2.1(a) base offense level of 14.

Furthermore, Paragraph 9 of the plea agreement states that information about "the entirety of the defendant's criminal activities" would be provided to the district court and would "not [be] limited to the count to which the defendant pled guilty." Unlike the plea agreement in *DeWitt*, the plea agreement in this case does not contain a more specific provision that conflicts with the Government's general authority under the plea agreement to present evidence of relevant conduct. Absent a conflicting provision, Stobaugh cannot successfully challenge the Government's decision to present to the district court the very information contemplated in Paragraph 9 of his plea agreement.

Finally, we note that Stobaugh's counsel stated for the record that Stobaugh received as consideration for entering into the plea agreement "the anticipated benefits of receiving a reduction for acceptance of responsibility" and the Government's agreement to "recommend a sentence at the low end of whatever applicable guideline range is determined." If Stobaugh understood the plea agreement to guarantee that the Government would not advocate for any upward adjustment to the § 2K2.1(a) base offense level for his other relevant conduct, we think this would have been cited as an important benefit. The parties were free to negotiate a plea agreement under which they were bound to certain stipulations, but in this case they did not.[2]

---

[2]In addition, the parties could have entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which, upon acceptance by the district court, would have bound not only the parties, but also the district court, to any unqualified stipulations regarding the defendant's base offense level. *See United States v. Martinez-Noriega*, No. 03-3648 (8th Cir. Aug. 1, 2005); *Thompson*, 403 F.3d at 1039-40 & n.1.

We conclude that the Government's presentation of evidence supporting the § 2K2.1(c) cross-reference offense level of 28, rather than the § 2K2.1(a) base offense level of 14, did not breach Stobaugh's plea agreement.

### B.   Application of the U.S.S.G. § 2K2.1(c) Cross-Reference

Stobaugh next argues that the district court erred in applying the cross-referencing provision of § 2K2.1(c). We disagree.

We review the district court's factual findings regarding the application of § 2K2.1 for clear error. *See United States v. White*, 354 F.3d 841, 844 (8th Cir. 2004). The cross-reference provision of § 2K2.1(c) provides, "(1) If the defendant used or possessed any firearm or ammunition *in connection with* the commission or attempted commission of another offense apply – (A) § 2X1.1 . . . in respect to that other offense, if the resulting offense level is greater than that determined above . . . ." (emphasis added). To be "in connection with" the commission of another offense under § 2K2.1, "the firearm must have some purpose or effect with respect to the drug trafficking crime [and] must 'facilitate, or have the potential of facilitating,' the drug trafficking offense." *United States v. Martinez*, 258 F.3d 760, 762 (8th Cir. 2001) (quoting *United States v. Regans*, 125 F.3d 685, 686 (8th Cir. 1997)).

Stobaugh argues that the district court clearly erred in relying upon Missouri Highway Patrol Sergeant Mike Rogers's ("Sergeant Rogers") testimony to conclude that Stobaugh possessed the gun in connection with methamphetamine trafficking. Stobaugh's mother and son both testified that Stobaugh has suffered from paranoid schizophrenia and post-traumatic stress disorder since being shot in 2000 and that he possessed the gun because he needed it to feel safe.

Relying upon police reports and interviews with two officers that executed the search warrant on Stobaugh's home, Sergeant Rogers testified that after his arrest, Stobaugh confessed that he sold drugs, including methamphetamine, from his residence. Stobaugh told the officer who interviewed him after his arrest that third parties often "fronted" him methamphetamine, which he diluted for sale, and that he hid the "rock methamphetamine" when he saw law enforcement approaching his home. Sergeant Rogers also testified that while executing the search warrant on Stobaugh's home, officers seized methamphetamine and marijuana paraphernalia, 58.84 grams of methamphetamine, a closed-circuit monitor with three cameras, a radio scanner that received police frequencies and the Mossberg 12-gauge which Stobaugh pleaded guilty of possessing.

The district court noted that personal protection and safety may have been part of Stobaugh's motivation for possessing the gun. Nevertheless, the district court found that Stobaugh possessed the gun in connection with his possession with intent to distribute methamphetamine because the gun had the potential for facilitating the drug trafficking. Given Sergeant Rogers's testimony and the strong connection between drug trafficking and firearm possession, we hold that the district court did not clearly err in that finding. *See Martinez*, 258 F.3d at 762 (noting that the enhancement is based in part on "the increased risk of violence whenever guns are in the possession of persons engaged in committing drug felonies").

## C. Criminal History Calculation

Stobaugh argues that the district court erred in crediting him certain criminal history points because the evidence of the underlying convictions used by the district court did not bear "sufficient indicia of reliability to support its probable accuracy" as required by U.S.S.G. § 6A1.3. We disagree.

The PSR attributed 13 criminal history points to Stobaugh. Six of those points resulted from convictions Stobaugh received in the State of Connecticut. Because the State of Connecticut destroys physical records of convictions after 10 years, the only available evidence of the convictions were assorted computer records, which the probation officer provided to the district court at Stobaugh's sentencing hearing. Many of the records were booking sheets, some were prison records and some of the records provided "some court documentation." Three other criminal history points resulted from three Missouri convictions for driving while intoxicated.[3] The probation officer provided the district court uncertified docket sheets relating to these convictions but did not provide certified copies of judgments or charging papers. The probation officer considered all of these records a "collateral response" to Stobaugh's objections to the convictions.

We review a district court's factual findings related to guidelines calculations for clear error. *United States v. Mashek*, 406 F.3d 1012, 1016-17 (8th Cir. 2005). To resolve a defendant's factual objections related to the application of the guidelines, the district court may consider "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *see also United States v. Fleck*, 413 F.3d 883, 894 (8th Cir. 2005). While certified records are generally sufficient to prove prior convictions, *United States v. Simpson*, 94 F.3d 1373, 1381 (10th Cir. 1996), they are not necessary. *See United States v. Roach*, 164 F.3d 403, 414 (8th Cir. 1998) (holding that police department records and computer records from a clerk's office were sufficient to prove prior convictions where the defendant challenged only the veracity of the

---

[3]Stobaugh objected to the fact of one of these convictions. He also claimed that the other two were the same conviction and should only produce one criminal history point. Thus, although Stobaugh objected to convictions that produced 9 criminal history points, even if the district court had sustained all of his objections, his criminal history total would have been reduced by only 8 points.

records, not that he was convicted of the crimes); *United States v. Herndon*, No. 95-3274, slip op. at 2-3 (8th Cir. Mar. 8, 1996) (unpublished per curiam) (holding that a probation officer's testimony was sufficient to establish prior juvenile conviction for which the records were sealed).

In this case, the district court reviewed numerous, and sometimes duplicative, records concerning each of Stobaugh's prior convictions.  Although the records were not certified copies of judgments against Stobaugh, they were from state agencies and authorities, and they represented the most accurate records those agencies could provide at the time.  *See Roach*, 164 F.3d at 414 ("Absence of records underlying a conviction is not enough to create a presumption of invalidity.").  Contrary to Stobaugh's assertions with regard to his DWI convictions, the records create no ambiguities as to the identity of each separate offense, the date of adjudication and the punishment that resulted.  Under these circumstances, we hold that the district court did not clearly err in relying on these records and assigning Stobaugh 13 criminal history points.

## D.  Booker Arguments

Stobaugh argues that he is entitled to resentencing because his sentence was pronounced under mandatory Sentencing Guidelines in violation of *United States v. Booker*, 125 S. Ct. 738 (2005).  Stobaugh's plea agreement, however, contained the following waiver: "The defendant agrees not to appeal or otherwise challenge the constitutionality or legality of the Sentencing Guidelines."  We have held that an identical provision waives a defendant's ability to raise an argument under *Booker* on appeal "even if the parties did not anticipate the *Blakely/Booker* rulings."  *United States v. Young*, 413 F.3d 727, 729 (8th Cir. 2005) (quoting *United States v. Fogg*, 409 F.3d 1022, 1025 (8th Cir. 2005)).  Thus, Stobaugh waived any argument relating to *Booker*, and we do not consider his arguments on appeal.

Nonetheless, Stobaugh argues that even though his waiver was knowing and voluntary, enforcing the waiver would cause a miscarriage of justice. *See Andis v. United States*, 333 F.3d 886, 891 (8th Cir. 2003). In particular, Stobaugh contends that enforcing the waiver would be a miscarriage of justice because the district court sentenced him to an illegal sentence. *See id*. at 891-92 (noting that the miscarriage-of-justice exception to appeal waivers includes the right to appeal illegal sentences). Even after *Booker*, however, a sentence is not illegal for purposes of this exception unless it exceeds the statutory maximum for the offense of conviction. *Young*, 413 F.3d at 730. The statutory maximum for a violation of 18 U.S.C. § 922(g)(1) is 10 years' imprisonment. *See* 18 U.S.C. § 924(a)(2). As Stobaugh was sentenced to only 110 months' imprisonment, his sentence was not illegal and enforcing his appeal waiver is not a miscarriage of justice.

## III. Conclusion

For the reasons stated above, we affirm Stobaugh's sentence.

_____