# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-4187

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Nicholas Peck, | * | Northern District of Iowa. |
| | * | |
| Appellant. | * | |
| | * | |
| | * | |

_____

Submitted: June 12, 2006
Filed: August 6, 2007

_____

Before MELLOY, SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Pursuant to two plea agreements, Nicholas Peck pled guilty to one count of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a), and one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1). The district court[1]

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

sentenced Peck to 420 months' imprisonment. Peck appeals his sentence, arguing that the Government breached one of the plea agreements, that the district court erred in applying two enhancements under the United States Sentencing Guidelines, and that his sentence is unreasonable. We affirm.

## I.    BACKGROUND

S.L., a fifteen-year-old girl, reported to Iowa law enforcement authorities that Peck, a twenty-four-year-old man, was involved in trafficking controlled substances from Illinois to Wisconsin and Iowa. S.L. also reported that Peck had a laptop computer containing pornographic images of her and another minor girl and that Peck had engaged in sex acts with her on six occasions in Iowa and on one occasion in Wisconsin. S.L. also informed the authorities he had given her cocaine.

While driving in Iowa, Peck was pulled over and arrested on an outstanding warrant. During his post-arrest interview, Peck admitted that his computer contained pictures of S.L.'s genitalia and pictures of a male having sex with S.L. Peck falsely denied he was the male pictured having sex with S.L. and also falsely denied that he took the pornographic pictures. Peck admitted he also possessed pornographic pictures of J.C., another fifteen-year-old girl, with whom he admitted to having sex. During the search of Peck's vehicle, authorities seized the following items: a laptop computer, two digital cameras, various electronic storage devices including compact discs, a hollowed out pen containing a white powdery residue, a digital scale with a white powdery residue, and a plastic baggie containing several pills. The compact discs revealed digital still and video images of Peck engaged in separate sexual acts with S.L., J.C., and another minor, K.V. At least one of the images depicted Peck having sexual intercourse with K.V., and several depicted Peck engaging in sexual acts with J.C. and displayed J.C.'s genitalia.

Following his arrest and release, Peck twice sold cocaine to a confidential informant, again resulting in his arrest. In this post-arrest interview, Peck admitted that he took the pornographic images of S.L. found on his laptop computer and admitted that he knew S.L. was fifteen years old when the pictures were taken. He also admitted that he took nude pictures of K.V. knowing that she was either fourteen or fifteen years old.

Peck was indicted in the Northen District of Iowa and charged with one count of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a). Peck pled guilty to these charges pursuant to a plea agreement ("first plea agreement"). Peck was subsequently indicted in the Western District of Wisconsin and charged with one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1). The drug charge was transferred pursuant to Rule 20 of the Federal Rules of Criminal Procedure to the Northen District of Iowa, where Peck pled guilty pursuant to a second plea agreement. The two cases were then consolidated for sentencing.

In paragraph three of the first plea agreement, the Government promised that it would "file no additional Title 18 criminal charges based upon information now in [its] possession." Paragraph five of the plea agreement stated that, in imposing sentence:

> [T]he court will . . . consider the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines for the applicable category of offense(s) committed by defendant and will consider any pertinent policy statements issued as part of the Guidelines. The court will consider relevant adjustments under the United States Sentencing Guidelines, which will include a review of such things as the defendant's role in the offense, his criminal history, his acceptance or lack of acceptance of responsibility and other considerations. The court may also consider other information including any information concerning the background, character, and conduct of the defendant.

-3-

Paragraph seven provided:

> The defendant, his attorney and the United States may make whatever comment and evidentiary offer they deem appropriate at the time of the guilty plea, sentencing or any other proceeding related to this case, so long as the offer or comment does not violate any other provision of this agreement. The parties are also free to provide all relevant information to the probation office for use in preparing the presentence report.

Finally, the first plea agreement contained no stipulation or recommendation whatsoever regarding the advisory sentencing guidelines, and it expressly noted that it "did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the court."

In accord with paragraph seven of the first plea agreement, the Government provided an offense conduct statement regarding the exploitation and pornography charges to the United States Probation Office and to Peck. In that statement, the Government stated its belief that Peck's advisory guidelines calculation should be enhanced three levels pursuant to U.S.S.G. § 2G2.1(d)(1), because the offense involved exploitation of three separate minors, and also enhanced five levels pursuant to U.S.S.G. § 4B1.5(b)(1), because Peck engaged in a pattern of activity involving prohibited sexual activity. The presentence investigation report subsequently prepared by the probation office accounted for this conduct and also recommended the enhancements.

At sentencing, the district court applied the enhancements pursuant to § 2G2.1(d)(1) and § 4B1.5(b)(1), giving Peck a total guideline offense level of 42. The district court calculated Peck's criminal history as a category III, which resulted in a final advisory sentencing guideline range of 360 months to life in prison. The district court sentenced Peck to 240 months' imprisonment on the drug charge and 360 months' imprisonment on the sexual exploitation charge, to be served

concurrently. The district court also sentenced Peck to 60 months on the pornography charge, to run consecutively to the other sentence, for a final sentence of 420 months' imprisonment. Peck filed a timely notice of appeal.

## II.    DISCUSSION

### A.    Plea Agreement

Peck argues that the Government breached paragraph three of the first plea agreement, but he concedes that our review of this issue is for plain error because he did not present this argument to the district court. We can correct an error not raised before the district court if there is "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Rice*, 449 F.3d 887, 894 (8th Cir.), *cert. denied*, --- U.S. ---, 127 S. Ct. 601 (2006) (quotation omitted). "We will reverse under plain error review only if the error prejudices the party's substantial rights and would result in a miscarriage of justice if left uncorrected." *United States v. McCourt*, 468 F.3d 1088, 1093 (8th Cir. 2006), *cert. denied*, --- U.S. ---, 127 S. Ct. 1866 (2007) (quotation omitted) .

Paragraph three of the first plea agreement states: "The U.S. Attorney's Office for this District will file no additional Title 18 criminal charges based upon information now in [its] possession." Peck concedes—as he must—that the Government has not filed any new indictment or information officially charging him with additional crimes, arguing instead that the Government "*effectively* filed additional charges when it advocated, after the execution of the plea agreement, [for] sentencing enhancements" pursuant to U.S.S.G. §§ 2G2.1(d)(1) and 4B1.5(b)(1). We disagree.

Peck cites no case, and our research has not revealed one, that supports the proposition that the Government's pursuit of sentencing enhancements breaches a

promise not to file additional criminal charges. The case cited by Peck, *United States v. Clark*, 55 F.3d 9 (1st Cir. 1995), is inapposite. In *Clark*, the Government agreed not to oppose a three-level downward departure for acceptance of responsibility. *Id.* at 12. In a sentencing memorandum it submitted to the district court, the Government made its position clear that no reduction was warranted, adding that it could not present "a more vigorous argument" because of the plea agreement. *Id.* The First Circuit held that although the Government did not formally oppose the reduction, it effectively opposed it in the memorandum. *Id.* *Clark* has no bearing on the present scenario. Unlike formally opposing a downward departure, which may be done "effectively" by other informal means such as in a memorandum, there is no way to file criminal charges "effectively." They are either filed or they are not. Here, the Government filed no additional charges, and Peck concedes as much.

Peck also cites *United States v. Fowler*, 445 F.3d 1035 (8th Cir. 2006), and *United States v. DeWitt*, 366 F.3d 667 (8th Cir. 2004). In *Fowler*, we held that the Government breached a plea agreement by actively advocating for career-offender status where the plea agreement specifically stipulated to an offense level that did not account for such status. *Fowler*, 445 F.3d at 1037. Likewise, in *DeWitt*, we held that the Government breached a plea agreement that stipulated to the drug quantity and base offense level when it presented evidence that the drug quantity and corresponding base offense level should be higher. *DeWitt*, 366 F.3d at 670.

In contrast to the plea agreements in *Fowler* and *DeWitt*, the plea agreement in this case does not contain any provision whatsoever regarding the advisory guidelines calculations. It does contain general language, not present in the plea agreements in *Fowler* and *DeWitt*, that expressly permits the Government to "provide all relevant information to the probation office for use in preparing the presentence report." Peck's case, therefore, is more akin to our decision in *United States v. Stobaugh*, 420 F.3d 796 (8th Cir. 2005), *cert. denied*, --- U.S. ---, 126 S. Ct. 1093 (2006). In *Stobaugh*, the plea agreement specified certain guidelines calculations but also stated

-6-

that the calculations "are only estimates and do not bind the parties." *Id*. at 801. The agreement also contained a provision stating "that information about 'the entirety of the defendant's criminal activities' would be provided to the district court and would 'not [be] limited to the count to which the defendant pled guilty.'" *Id*. Noting that the plea agreement did not contain a more specific provision like that in *DeWitt* that conflicted with the Government's general authority under the plea agreement to present evidence of relevant conduct, we held that there was no breach. *Id*. at 800-01 (citing *DeWitt*).

As in *Stobaugh*, Peck's plea agreement lacks a specific provision that conflicts with the general provision granting the Government express authority to "provide all relevant information to the probation office for use in preparing the presentence report." Absent a conflicting provision, Peck cannot successfully challenge the Government's decision to present to the probation office and to the district court the very information contemplated by paragraph seven of the first plea agreement. Therefore, because the Government did not file additional charges and engaged in conduct expressly authorized by the first plea agreement, we hold that there was no breach. Accordingly, Peck's claim fails to survive our plain error review because without an identified error there is no substantial injustice left uncorrected. *See Rice*, 449 F.3d at 894.

### B. Double Counting

The district court applied sentencing enhancements pursuant to U.S.S.G. §§ 2G2.1(d)(1) and 4B1.5(b)(1). Peck does not dispute that his conduct qualifies him for these enhancements. Rather, Peck contends that the five-level increase to his sentence pursuant to § 4B1.5(b)(1) impermissibly double counts conduct already accounted for in the three-level enhancement he received pursuant to § 2G2.1(d)(1). We review de novo whether the district court's application of the sentencing guidelines amounts to impermissible double counting. *United States v. Kiel*, 454 F.3d 819, 822 (8th Cir. 2006).

-7-

"Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been . . . accounted for by application of another part of the Guidelines." *United States v. Jones*, 440 F.3d 927, 929 (8th Cir.), *cert. denied*, --- U.S. ---, 127 S. Ct. 130 (2006) (quotations omitted). Such double counting is permissible where "(1) the [Sentencing] Commission intended the result and (2) each statutory section concerns conceptually separate notions related to sentencing." *United States v. Hipenbecker*, 115 F.3d 581, 583 (8th Cir. 1997).

Section 2G2.1(d)(1) states: "If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction." Peck acknowledged that he sexually exploited three minor children, and the district court applied Chapter Three of the Guidelines as though each of the three minors had been contained in a separate count. This application resulted in an increase of three levels to Peck's base offense level. *See* U.S.S.G. § 3D1.4.

Section 4B1.5(b)(1) states: "In any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct: (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three. . . ." Peck does not dispute that his conviction for production of child pornography in violation of 18 U.S.C. § 2251(a) constitutes a "covered sex crime" and is "prohibited sexual conduct." A "pattern of activity" for the purposes of § 4B1.5(b)(1) occurs when the defendant engages in the prohibited sexual conduct with a minor on at least two separate occasions. U.S.S.G. § 4B1.5, cmt. n. 4(B)(i). Peck also does not dispute that he engaged in prohibited sexual conduct with minor children on at least two separate occasions, thus constituting a pattern of activity involving prohibited sexual conduct.

Peck contends that the district court's imposition of a five-level increase pursuant to § 4B1.5(b)(1) for engaging in a "pattern of activity" after the imposition

of a three-level, multiple-victim enhancement under § 2G2.1(d)(1) constitutes impermissible double counting because both enhancements are premised upon the same conduct—namely, his sexual exploitation of each of the three minor children. Peck's characterization of the targeted harm is too broad.

The application of § 2G2.1(d)(1) punished Peck for exploiting three different minors, while the § 4B1.5(b)(1) enhancement punished him for exploiting those minors on multiple occasions. *See United States v. Schmeilski*, 408 F.3d 917, 920 (7th Cir. 2005) (holding that the application of both § 2G2.1(d)(1) and § 4B1.5(b)(1) does not constitute impermissible double counting). As such, the separate enhancements for the number of minors Peck exploited and for the fact that Peck exploited the minors on multiple occasions are not premised on the same harm. *See id.* (noting that for a defendant who had on only one occasion photographed three minor children engaging in sexually explicit conduct, § 2G2.1(d)(1) would apply because more than one minor was exploited but § 4B1.5(b)(1) would not because prohibited sexual conduct did not occur on at least two separate occasions). Therefore, because § 2G2.1(d)(1) and § 4B1.5(b)(1) do not address the same kind of harm, the application of both in calculating Peck's sentence did not constitute double counting under these circumstances.

## C.    Peck's Sentence

"We review appellant's sentence for reasonableness." *United States v. Cadenas*, 445 F.3d 1091, 1094 (8th Cir. 2006). "In doing so we, like the district court, begin with the applicable guidelines sentencing range." *Id.* The Supreme Court recently held that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines." *Rita v. United States*, --- U.S. ---, 127 S. Ct. 2456, 2462 (2007). Because the district court properly calculated the advisory sentencing guidelines range for Peck, and because it sentenced Peck within that range, Peck's sentence is cloaked in a presumption of reasonableness. *See id.*

However, this presumption may be rebutted by reference to the factors listed in 18 U.S.C. § 3553(a). *Cadenas*, 445 F.3d at 1094, *see also United States v. Harris*, --- F.3d ---, No. 06-2892, slip op. at 6 (8th Cir. July 9, 2007). In other words, Peck must show that the "district court failed to consider a relevant factor that should have received significant weight, gave significant weight to an improper or irrelevant factor, or considered only appropriate factors but nevertheless committed a clear error of judgment," in order for his sentence within the guidelines range to be considered unreasonable. *Cadenas*, 445 F.3d at 1094. "[W]hile we do not require the district court to mechanically recite each of the § 3553(a) factors, it must be clear from the record that it actually considered them in determining the appropriate sentence." *Id*.

Peck concedes that the facts considered by the district court in reaching his sentence were "doubtless 'relevant' under 18 U.S.C. § 3553(a)," and he instead argues that "[g]iven the *maximum* sentence permitted by law on the most serious count, [sexual exploitation of a minor], is thirty years, it is reasonable to conclude that a sentence at the bottom of the 360 to life range might be appropriate." While this argument may explain why a different sentence would be reasonable, it fails to explain why the within-guidelines-range sentence he received is unreasonable. *See United States v. Bryant*, 446 F.3d 1317, 1319 (8th Cir. 2006) (noting that "there is a range of reasonableness available to the district court in any given case"). Further, to the extent that this argument suggests that the district court should have run his sentence on the possession of child pornography charge concurrently rather than consecutively, we find it to be without merit. The district court's decision to run Peck's sentences consecutively is authorized under the guidelines and is proper under this circuit's case law. *See* U.S.S.G. § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."); *United States v. Thomas*, 484 F.3d 542, 546 (8th Cir. 2007).

Peck argues that because each minor "apparently may have even thought of [Peck] as their boyfriend," there was no evidence to support the district court's conclusion that Peck "preyed upon" teenage girls for sexual relations. We reject Peck's argument and note that the district court's conclusion regarding Peck's conduct is supported by our cases. *See, e.g., United States v. Abad*, 350 F.3d 793, 798 (8th Cir. 2003) ("[W]hen sexual assaults are committed upon children . . . , consent is not a defense. The reason is that the victims in these cases, because of ignorance or deceit, do not understand what is happening to them. Therefore their 'consent' is of no significance.") (quotation omitted).

Peck also contends that the district court did not consider facts in his background that call for leniency, such as the death of his girlfriend and letters submitted to the district court on his behalf. First, the girl Peck claims was his "girlfriend" was actually one of the minor victims he sexually exploited. Her death, though tragic, does not call for leniency vis-a-vis Peck. Second, the record reveals that the district court did consider the letters submitted on Peck's behalf, and nothing in the record demonstrates that they were given inappropriate weight.

Peck's arguments are without merit in that they fail to demonstrate that the district court's sentence was unreasonable. The district court made a clear record of the sentencing factors relevant under § 3553(a), and our review of it shows that the district court considered them, weighed them properly and did not commit a clear error of judgment in arriving at Peck's sentence, which was within the range of choice dictated by the facts of the case. Accordingly, Peck's sentence was not unreasonable. *See Harris*, slip op. at 6-7; *Cadenas*, 445 F.3d at 1094.

## III.   CONCLUSION

For the foregoing reasons, we affirm Peck's sentence.

_____

-11-