# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2913

_____

United States of America

*Plaintiff - Appellee*

v.

Nathan Todd Ozmon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: April 11, 2013
Filed: May 1, 2013

_____

Before MURPHY, BEAM, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

Nathan Ozmon pled guilty to conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 841. At sentencing the district court[1] applied an

_____

[1]The Honorable James E. Gritzner, Chief Judge, United States District Court for the Southern District of Iowa.

enhancement for possession of a dangerous weapon in connection with the conspiracy and sentenced Ozmon to 209 months, and Ozmon appeals. We affirm.

Ozmon and nine other individuals were indicted in May 2011 for conspiracy to distribute 1000 kilograms or more of marijuana. They were accused of running a distribution ring in the Davenport, Iowa area which was responsible for importing, repackaging, and selling thousands of kilograms of marijuana. Ozmon was alleged to have been a mid level operative working under the ringleader, Jason Mueller.

After his arrest in July 2011, Ozmon met with police and prosecutors to discuss a potential plea arrangement. The parties informally agreed that any self incriminating statements Ozmon made during the proffer interview would not be used against him unless he later took a position that was inconsistent with those admissions. The parties later formalized this understanding in a written cooperation agreement.

In his proffer interview Ozmon gave a detailed account of his participation in the drug conspiracy. He admitted his involvement in transporting, repackaging, and distributing marijuana; he also allowed Mueller to store large quantities of marijuana in the basement of his home. In addition Ozmon admitted that on one occasion he had allowed Mueller and another coconspirator Eric Thomson to store 40 to 50 stolen firearms at his home. After the proffer interview, Ozmon and the government signed formal cooperation and plea agreements. The cooperation agreement provided that the government would not use self incriminating information provided by Ozmon unless he "denie[d] the same or present[ed] evidence to the contrary" at a later time. It also allowed the government to use "evidence developed independent [sic] of the defendant's self-criminating [sic] statements."

The parties agreed that Ozmon would be sentenced as a career offender due to his prior felony drug convictions, but they disputed whether a sentence enhancement under U.S.S.G. § 2D1.1(b)(1) should apply for possession of a dangerous weapon in

furtherance of the conspiracy. Ozmon's presentence investigation report (PSR) recommended that the enhancement be applied because Ozmon had "allowed Mueller to store . . . guns at his residence," citing information provided by Mueller at his proffer interview. Ozmon objected to the statement, asserting that he "did not allow guns to be stored at his residence." Then at the sentencing hearing, the government called a police witness to testify about Ozmon's self incriminating statements at the proffer interview. It also introduced into evidence the officer's summary of the proffer interview. Ozmon objected to the officer's testimony, arguing that the government was barred by the cooperation agreement from using his self incriminating statements. The district court overruled his objection and applied the enhancement.

The district court calculated a guideline range of 262 to 327 months. The government moved for a downward departure based on Ozmon's substantial assistance, and Ozmon moved for a downward departure based on coercion or duress. Ozmon argued that he had been coerced into participating in the conspiracy by Mueller who had threatened to harm his stepson. The district court granted the government's motion based on Ozmon's substantial assistance and departed downward approximately 20% from the bottom of the guideline range. It denied Ozmon's own departure motion based on coercion or duress and sentenced him to 209 months.

On his appeal, Ozmon first argues that the government breached the cooperation agreement by using his self incriminating statements from his proffer interview. This is a question of law which we review de novo. United States v. Lopez, 219 F.3d 343, 346 (4th Cir. 2000). We interpret the cooperation agreement between Ozmon and the government according to general contract principles, United States v. Brown, 801 F.2d 352, 354 (8th Cir. 1986), construing any ambiguous provisions in Ozmon's favor, United States v. Stobaugh, 420 F.3d 796, 800 (8th Cir. 2005).

The cooperation agreement in this case is unambiguous. The government was prohibited from using "any self-incriminating information provided by [Ozmon]" at the proffer interview unless he "denie[d] the same or present[ed] evidence to the contrary at any hearing subsequent to the signing of [the cooperation agreement]." Once Ozmon admitted in his proffer interview that he had allowed Mueller and Thomson to store guns at his residence, he could not "den[y] the same or present[] evidence to the contrary" without sacrificing his protection against the use of his self incriminating statements.

Ozmon stated in an objection to his PSR that he "did not allow guns to be stored at his residence." This statement directly contradicted what he had previously said at the proffer interview where he had admitted allowing Mueller and Thomson to store 40 to 50 stolen firearms at his residence. His objection to the PSR therefore triggered the provision in the cooperation agreement which allowed the government to use Ozmon's self incriminating statements if he later contradicted them. The government then permissibly presented evidence about those self incriminating statements. We therefore conclude that the government did not breach the cooperation agreement when it used Ozmon's self incriminating statements from his proffer interview.

Ozmon also argues that the sentence imposed by the district court was substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). The district court imposed a 209 month sentence after departing downward from the bottom of Ozmon's guideline range of 262 to 327 months. Ozmon contends that the 18 U.S.C. § 3553(a) sentencing factors supported an additional downward variance because he had a difficult childhood and had taken parental responsibility as a stepfather to his wife's children. Although he concedes that he is a career offender, he contends that a 209 month sentence is unreasonably long given that his longest incarceration for a prior offense was 78 days. Under all the circumstances, we conclude that it was not unreasonable to sentence Ozmon to 209 months.

For these reasons we affirm the judgment of the district court.

_____