# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2170
_____

United States of America

*Plaintiff - Appellee*

v.

Carvon Brown

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 12, 2021
Filed: July 21, 2021

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In a plea agreement, Carvon Brown and the Government stipulated to a Sentencing Guidelines' base offense level of 12. But the Government later endorsed the Presentence Investigation Report's ("PSR") contrary base-offense-level calculation of 20. The district court sentenced Brown to 72 months' imprisonment after adopting the PSR's calculation. Brown appeals, arguing that the Government

breached the plea agreement. For the following reasons, we vacate Brown's sentence and remand for resentencing before a different district court judge.

## I.

Pursuant to a plea agreement, Brown pleaded guilty to knowingly possessing a stolen firearm. *See* 18 U.S.C. § 922(j). In the plea agreement, the parties agreed that "[t]he applicable Guidelines section for the offense . . . is U.S.S.G. § 2K2.1(a)(7)," with "a base offense level of 12." By contrast, the PSR calculated a base offense level of 20. This disparity came from the PSR's conclusion that Brown was a prohibited person whose offense involved possessing a semiautomatic firearm capable of receiving a large-capacity magazine. *See* § 2K2.1(a)(4)(B). Brown objected to this. The Government did not, instead stating in its sentencing memorandum that it "believe[d] that the range calculated by [the PSR] [was] appropriate."

At the first of two sentencing hearings, Brown again objected to the PSR's base-offense-level calculation, noting that it was higher than what the parties had agreed to in the plea agreement. For its part, the Government acknowledged the plea agreement's lower calculation but nonetheless stated that the PSR's calculation was correct. The Government also volunteered that it "thought [Brown] was going to have a hard time overcoming [the large] capacity magazine." It then made "a proffer" that the gun at issue had a seventeen-round magazine and "[o]bviously . . . fit[] the definition" in § 2K2.1(a)(4)(B). Nonetheless, the Government told the court that it was not currently prepared to prove § 2K2.1(a)(4)(B)'s applicability, prompting the district court to postpone the hearing.

At the second sentencing hearing, after a witness established that the gun had a large-capacity magazine, the Government again agreed with the PSR calculation. When asked if it had a sentencing recommendation, the Government stated:

I would ask you to stick to the plea agreement. . . . [D]efense counsel . . . believe[s] it may possibly be a breach of the plea agreement on my part if I argue for the higher guideline sentence than what I had argued for in the plea agreement. So because of that, Judge, I told [defense counsel] that I will stand silent when it comes to a recommendation, because he believes it possibly may be a breach of the plea agreement. I don't think it would be, but be that as it may . . . .

In response, defense counsel argued that the Government had breached the plea agreement by filing a sentencing memorandum endorsing the PSR's calculations. Without expressly deciding the issue, the court seemingly concluded that the Government had not breached.

Ultimately, the district court overruled Brown's objection, adopted the PSR's calculation, and sentenced Brown to 72 months' imprisonment. Brown appeals, arguing that the Government breached the plea agreement.

## II.

At the outset, the Government argues that we must dismiss Brown's appeal because he waived his right to appeal in the plea agreement. Not so. "If the government breached the plea agreement, [the defendant] may proceed with his appeal despite the appellate waiver." *United States v. Pierre*, 912 F.3d 1137, 1142 (8th Cir. 2019) (internal quotation marks omitted). Accordingly, "the appeal waiver does not prevent us from reviewing [the] claim that the plea agreement was breached." *See United States v. Lewis*, 673 F.3d 758, 761 (8th Cir. 2011).

The Government also argues that, even if the appeal waiver does not prevent us from reaching the merits, we are limited to plain-error review because Brown forfeited his argument. "[A] party forfeits a merits review by failing to object," in which case we "conduct plain error review." *United States v. Campbell*, 764 F.3d 874, 878 (8th Cir. 2014). Although the Government acknowledges that Brown's counsel expressly argued that it had breached the plea agreement, the Government

nonetheless maintains that this was insufficient to preserve the issue because Brown did not specifically ask for relief. The Government demands too much.

True, we have said in *dicta* that "[w]ithout an objection and a proper request for relief, the matter is waived." *See United States v. Allmon*, 500 F.3d 800, 806 (8th Cir. 2007); *United States v. Collins*, 340 F.3d 672, 682 (8th Cir. 2003); *McKnight ex rel. Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1407 (8th Cir. 1994); *Owen v. Patton*, 925 F.2d 1111, 1115 (8th Cir. 1991). But we are not bound by *dicta*. *McIntyre v. Reliance Standard Life Ins. Co.*, 972 F.3d 955, 963 (8th Cir. 2020). And we have never held that an objection must be accompanied by a request for relief to preserve an issue for appellate review.

Rather, we have held that "[t]o preserve an error for appellate review, an objection must be timely and must clearly state the grounds for the objection." *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) (brackets and internal quotation marks omitted); *see also United States v. Johnson*, 710 F.3d 784, 788 (8th Cir. 2013) (explaining that a specific and timely objection preserves the issue). For example, in *United States v. Fowler*, we found the issue preserved because the defendant "raised the issue of the plea agreement in his objections to the PSR, and dedicated a good deal of his subsequent sentencing memorandum to his assertion that the government was in breach by advocating for a sentence different than as stated in the plea agreement." 445 F.3d 1035, 1037 n.2 (8th Cir. 2006). We said nothing about whether the defendant also sought specific relief.

The Supreme Court's decision in *Puckett v. United States*, 556 U.S. 129 (2009), also rebuts the Government's view. There, in considering whether the defendant had forfeited his plea-agreement-breach claim, the Supreme Court held that a litigant "must object in order to preserve the issue." *Id.* at 133-34. It further explained that, in such cases, "Rule 51(b) tells parties how to preserve claims of error: 'by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection.'" *Id.* at 135. Here, Brown argued

-4-

expressly at sentencing that the Government had breached the plea agreement. This was sufficient to apprise the district court of Brown's "objection . . . and the grounds for that objection." *See id.*

Thus, we review Brown's claim *de novo*. *See United States v. E.V.*, 500 F.3d 747, 751 (8th Cir. 2007).

"When the offense level is part of the inducement or consideration for pleading guilty, the government breaches a plea agreement by advocating a higher offense level than that specified in the agreement." *United States v. Lovelace*, 565 F.3d 1080, 1087 (8th Cir. 2009). In *Lovelace*, the plea agreement stipulated to a base offense level of 20 under one guidelines provision. *Id.* at 1083. The PSR calculated a base offense level of 24 under a different guidelines provision. *Id.* And at the sentencing hearing, the government told the district court that the PSR calculation was "correct." *Id.* at 1083-84. Applying plain-error review (a more challenging standard for the appellant than we apply here), we concluded based on this statement that the government had breached the plea agreement. *Id.* at 1087.

So too here. In the plea agreement, the Government agreed to a base offense level of 12 under § 2K2.1(a)(7). Yet, in its sentencing memorandum, it said that the PSR's base offense level of 20 under § 2K2.1(a)(4)(B) was "appropriate." In doing so, the Government advocated for a different applicable guidelines section and higher base offense level than it had agreed to, thus breaching the plea agreement. *See Lovelace*, 563 F.3d at 1087; *Fowler*, 445 F.3d at 1036-38 (holding that the government had breached a plea agreement in part by advocating for the PSR's higher-than-agreed-to offense-level calculation in its sentencing memorandum).

The Government seems to argue that it cured any such breach because, at the end of the second sentencing hearing, it told the district court to "stick to the plea agreement." But the Government cites no case where we have held that it may cure the breach of a plea agreement, and we are unaware of any.

Even assuming "a cure is possible," other "circuits require that the government offer an 'unequivocal retraction' of its erroneous position to sufficiently cure a breach." *United States v. Ligon*, 937 F.3d 714, 720 (6th Cir. 2019). The Government's conduct here is a far cry from an "unequivocal retraction." In the same breath as telling the district court "to stick to the plea agreement," the Government maintained that it was allowed to argue for a higher-than-agreed-to calculation. *See United States v. Boatner*, 966 F.2d 1575, 1579 (11th Cir. 1992) (rejecting, in a plea-breach case, the government's "attempts to hide behind its statement" that it would "stick to" the agreement when its actions indicated the opposite). And it made clear that the only reason it was not arguing for a higher-than-agreed-to sentence was because defense counsel had claimed it would constitute a breach.

Further, although the Government boasts that it "scrupulously adhered to the plea agreement," its conduct even aside from the sentencing memorandum tells a different story. For example, at the first sentencing hearing, the Government "proffer[ed]" facts establishing a higher base offense level than the plea agreement stipulated and essentially invited the district court to go on a fishing expedition for additional supporting facts. *United States v. Thompson*, 403 F.3d 1037, 1040 (8th Cir. 2005) (finding breach in similar circumstances). And at both the first and second sentencing hearings, the Government endorsed the PSR's higher-than-agreed-to calculation. *See Lovelace*, 565 F.3d at 1087 (finding breach in similar circumstances). This conduct was hardly the meticulous fidelity to the plea agreement we require. *Cf. E.V.*, 500 F.3d at 751 (explaining that the federal government's breach of a plea agreement "violates due process" and threatens "the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government").

In sum, even assuming that the Government could cure its breach, its half-hearted and begrudging statement that the district court should follow the agreement was not enough—especially taking a holistic view of the Government's plea-related conduct. *See United States v. Munoz*, 408 F.3d 222, 224-25, 228 (5th Cir. 2005)

-6-

(concluding that a prosecutor's request for the district court to follow the plea agreement, after he had already advocated otherwise, "amounted to little more than lip service . . . and did not rectify the breach").

### III.

Accordingly, we vacate Brown's sentence and remand for resentencing before a different district court judge. *See Thompson*, 403 F.3d at 1041 (doing the same). We make clear that this reassignment in no way questions the fairness of the sentencing judge. *Id.*

_____