# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1084
_____

United States of America,

*Plaintiff - Appellee,*

v.

Elena Lev Polukhin,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the District of Minnesota - St. Paul
_____

Submitted: October 19, 2017
Filed: July 19, 2018
_____

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Elena Polukhin, a physician, pleaded guilty to one count of aiding and abetting the solicitation and receipt of kickbacks in return for referring patients to a pharmacy. *See* 42 U.S.C. § 1320a-7b(b)(1)(A); 18 U.S.C. § 2. The district court[1] sentenced

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Polukhin to eighteen months' imprisonment, and ordered her to make restitution in the amount of $421,329.19. Polukhin appeals only the restitution order. The offense of conviction did not authorize the amount of restitution ordered, but Polukhin's plea agreement allowed the court to consider other criminal conduct that would justify restitution. We conclude that the district court did not clearly err in finding that Polukhin conspired with others to defraud the United States of an amount that justified the award. We therefore affirm the judgment.

I.

Polukhin was a physician in Minnesota. In pleading guilty to the kickback charge, Polukhin admitted that in March 2014, she knowingly received $660 in remuneration in exchange for referring patients to Best Aid Pharmacy in St. Louis Park, Minnesota. Polukhin wrote prescriptions for a pain-relief cream, and the pharmacy filled the prescriptions and sought reimbursement from the federally-funded Medicare and Medicaid programs. In a plea agreement, the government agreed to dismiss twenty-eight other counts charged by the grand jury: one count of conspiring to execute a scheme to defraud a health care benefit program between February 2011 and December 2014, nineteen more counts of aiding and abetting soliciting and receiving kickbacks between June 2012 and February 2014, three substantive counts of health care fraud, three counts of aggravated identity theft, and two counts of unlawful distribution and dispensing of controlled substances.

At sentencing, much of the dispute concerned whether Polukhin participated only in the solicitation and receipt of kickbacks from Best Aid Pharmacy, or whether she also conspired more broadly with two men at the pharmacy to defraud the government. Boris Rabichev, part owner and managing partner of Best Aid, and Richard Custer, a pharmacist at Best Aid, pleaded guilty to a conspiracy to defraud the United States. Their agreement involved a scheme to bill Medicare and Medicaid inflated amounts for the pain-relief creams that Polukhin prescribed.

Best Aid was involved in "compounding" certain medications, meaning that the pharmacy prepared them by mixing individual ingredients according to a prescription. There were two methods to produce the pain-relief creams: one used bulk powders; the other involved use of at least one individual capsule that contained powder. Custer discovered that Medicare and Medicaid reimbursed at a higher rate if the pharmacy used individual dosage units. But the manufacturing process with dosage units was more time-consuming and laborious because it required opening individual capsules to obtain the powder.

The fraud occurred when Rabichev and Custer decided to use bulk powder to create the pain-relief cream, but to represent falsely to Medicare and Medicaid that they used individual dosage units. This approach allowed Best Aid to receive reimbursements of $463,052.33 from the government when accurate submissions would have generated $41,723.14.

At Polukhin's sentencing hearing, the principal dispute concerned the scope of her relevant conduct under the advisory sentencing guidelines. Polukhin acknowledged that she was responsible for conduct that encompassed a total of twenty kickback payments from Best Aid, but denied that she was a knowing participant in the pharmacy's larger fraud scheme. The government urged that Polukhin did participate in the fraud scheme with Rabichev and Custer, and that she should be accountable under the guidelines for the full amount of loss to the government caused by that scheme.

The district court found that Polukhin was involved in the fraud scheme with Rabichev and Custer, and rejected Polukhin's position that her culpability was limited to soliciting and receiving kickbacks. The court found that there was "a relationship between Rabichev and Polukhin which made this scheme come into fruition," and emphasized that Polukhin was "the feeder for the prescriptions which set up the healthcare fraud to happen," and that "part of that scheme was the kickbacks that

came back." The court cited evidence that Polukhin had a strong interest in the compounding business and that she considered starting her own business. After quoting an e-mail from Polukhin stating that preparing pain-relief creams from her recipes would be "a huge business," the court found that Polukhin's statements "belie[d] any evidence of not knowing or understanding what would be happening with regard to reimbursement."

The district court ultimately adopted most of the presentence report prepared by the probation office. The adopted report included a finding that "Boris Rabichev used his experience as part owner and managing partner of Best Aid Pharmacy to conspire with Elena Polukhin, Richard Custer, and others to defraud the United States." The court held Polukhin accountable under the guidelines for a loss amount of $421,329.19—the difference between the amount that Medicare and Medicaid paid to Best Aid and the amount that the government would have paid if Best Aid had made truthful submissions.

There was no separate debate at sentencing concerning the amount of restitution owed. In her written submissions on restitution, however, Polukhin incorporated her arguments on loss amount, and claimed "no role" in the billing fraud perpetrated by Rabichev and Custer. The district court, having rejected Polukhin's position on the loss amount under the guidelines, simply ordered Polukhin to make restitution in the same amount, $421,329.19, without further discussion.

On appeal, Polukhin disputes only the restitution order; she does not challenge the district court's calculation of her loss amount or offense level under the guidelines. The government responds that Polukhin waived any challenge to the restitution and that her arguments are without merit in any event.

II.

A district court may order restitution only when authorized by statute. *United States v. Yielding*, 657 F.3d 688, 718 (8th Cir. 2011). In this case, no statute authorizes the amount of restitution ordered based on a single conviction for aiding and abetting the solicitation or receipt of a kickback of $660. The Victim and Witness Protection Act, however, provides that the court may order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense. 18 U.S.C. § 3663(a)(1)(A). The parties dispute whether Polukhin's plea agreement provided authority for the award at issue here.[2]

The plea agreement included the following paragraph on restitution:

> **Restitution.** The defendant understands and agrees that the defendant may be ordered to make restitution to the victims of her crime. The defendant understands and agrees that the Court may order her to make restitution for amounts above and beyond those directly caused by the offense of conviction. The United States maintains that the amount of restitution is $421,329.19. The defendant reserves the right to contest this restitution amount. The defendant understands and agrees that the Court will determine the amount of restitution and may order the defendant to make restitution for amounts beyond those directly caused by the offense of conviction if the Court determines at sentencing that

---

[2]The government mistakenly argues that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, also provides for an award based on Polukhin's participation in the fraud conspiracy with Rabichev and Custer. That statute says that in the case of a plea agreement that does not result in a conviction for one of the offenses enumerated in the statute, restitution may be ordered "only if the plea specifically states that an offense" listed in the statute "gave rise to the plea agreement." *Id.* § 3663A(c)(2). Polukhin's kickback offense is not among the enumerated offenses, *see Yielding*, 657 F.3d at 718-19, and the plea agreement does not identify an enumerated offense as giving rise to the agreement.

the United States has established such amounts as compensable under the applicable restitution statutes.

The government argues that we need not address whether the court was authorized to order restitution, because Polukhin waived her right to appeal the restitution order. The plea agreement, however, did not include a provision stating that Polukhin waived her right to appeal. *Cf. United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc). The government cites *United States v. Lester*, 200 F.3d 1179, 1179 (8th Cir. 2000), where this court held that an agreement "to pay any restitution ordered by the District Court" barred an appeal of a restitution order, and *United States v. Bartsch*, 985 F.2d 930, 933 (8th Cir. 1993), where we affirmed a restitution order after a defendant specifically agreed that the court could enter restitution up to a certain dollar amount. In this case, by contrast, Polukhin did not agree to pay whatever the district court ordered. She expressed understanding that she "may be ordered to make restitution," but also "reserve[d] the right to contest" the government's proposed restitution amount, and did not waive her right to appeal the district court's decision. *Lester* and *Bartsch* are not controlling.

The government also contends that Polukhin waived her right to appeal by arguing that her willingness to pay restitution from an escrow account supported a reduced term of imprisonment. But a willingness to pay whatever restitution is lawfully ordered is not inconsistent with reserving a right to appeal the lawfulness of a restitution order. Polukhin's argument at sentencing was not a waiver of the right to appeal. The government similarly asserts that Polukhin's payment of most of the restitution amount into the registry of the district court waived her right to appeal. The payment, however, simply complied with the district court's judgment that most of the restitution was due "immediately." Compliance did not waive Polukhin's right to appeal the order and seek return of the funds if she were to prevail.

Although Polukhin apparently did not ask the district court to retain the funds in its registry pending appeal, the clerk's disbursal of funds to victims does not moot the appeal. A portion of the restitution was not due until Polukhin completed her prison term, and we have not been notified that Polukhin paid this amount to the district court or that the court disbursed such funds to victims. There is a live controversy over restitution because Polukhin may ask the district court to order a refund if the restitution order is vacated on direct appeal, *see Nelson v. Colorado*, 137 S. Ct. 1249, 1252 (2017); *United States v. Beckner*, 16 F. Supp. 2d 677, 679 (M.D. La. 1998), or perhaps seek an order for the return of funds from those to whom the clerk disbursed the money. *Cf. Life Inv'rs Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1121 (8th Cir. 2012); *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1058 (7th Cir. 1998); *Cramer v. Phx. Mut. Life Ins. Co.*, 91 F.2d 141, 145-46 (8th Cir. 1937).

In her appeal of the restitution order, Polukhin argues that the plea agreement allowed the district court to order restitution for kickbacks that were not encompassed by her offense of conviction, but did not authorize the court to include an amount based on the broader conspiracy to defraud the United States. The pertinent language in the agreement states that the court "may order the defendant to make restitution for amounts beyond those directly caused by the offense of conviction if the Court determines at sentencing that the United States has established such amounts as compensable under the applicable restitution statutes." Nothing in this statement limits the court to restitution for kickbacks. The agreement states without limitation that the court may order restitution if such amounts "are compensable under the applicable restitution statutes." If Polukhin conspired to defraud the United States, then restitution is authorized for that offense under 18 U.S.C. § 3663(a)(1)(A). Ordinarily, the government would be required to establish a conviction for conspiracy to defraud, but Polukhin's plea agreement allowed the court to order amounts "beyond those directly caused by the offense of conviction." That language is sufficient to authorize restitution for a conspiracy to defraud the United States under

the restitution statute if there was a proper finding that Polukhin committed the offense.

The district court, by adopting the presentence report, found that Polukhin conspired with Rabichev and Custer to defraud the United States. The evidence of Polukhin's involvement in the conspiracy was largely circumstantial, but the district court's finding was not clearly erroneous. Polukhin had approached Custer and Rabichev about filling prescriptions for her pain-relief creams. She knew that the pharmacy could claim reimbursement from Medicare and Medicaid. There was evidence that Polukhin repeatedly considered entering the compounding pharmacy business herself between 2012 and 2014, stating in November 2012 that it was "a HUGE business." Polukhin was in a romantic relationship with Rabichev, and sought in April 2012 for him to control their joint finances. She knew, of course, that Rabichev valued her prescriptions enough to pay kickbacks for her referral of patients over a two-year period. The district court reasonably inferred that Polukhin, as the "feeder for the prescriptions," knew about the fraudulent reimbursement scheme that relied on the prescriptions, and that she voluntarily joined a conspiracy that would benefit her financially through her relationship with Rabichev. Because the conspiracy to defraud directly and proximately caused Medicare and Medicaid to lose $421,329.19, the district court was authorized to order Polukhin to make restitution in that amount.

The judgment of the district court is affirmed.

_____