# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2186
_____

United States of America

*Plaintiff - Appellee*

v.

Timothy Beston, Jr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: February 16, 2022
Filed: August 8, 2022
_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Timothy Beston, Jr. pled guilty to one count of malicious mischief, in violation of 18 U.S.C. §§ 1363, 1153, for driving a stolen vehicle into a lake on the Turtle Mountain Indian Reservation in North Dakota. The district court sentenced Beston to 21 months imprisonment and 3 years supervised release, and it ordered him to pay restitution totaling $30,845.50. On appeal, Beston challenges the restitution amount as violative of the Mandatory Victims Restitution Act (MVRA)

and asserts that the government breached his plea agreement. The government moved to dismiss his appeal, citing the waiver of appellate rights in the plea agreement. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. §§ 3664(o)(1)(B), 3742(a), we deny the government's motion and vacate the order of restitution.

I.

On March 31, 2020, Bureau of Indian Affairs (BIA) law enforcement received a report of a vehicle driving erratically on the Turtle Mountain Indian Reservation. Law enforcement responded and observed the vehicle but lost track of it after the driver shouted and sped off. Law enforcement subsequently located the vehicle in Lake Schutte. The driver, later identified as Beston, and a female passenger had fled on foot. A cell phone linked to Beston was found near the vehicle. Law enforcement identified the vehicle as a 2019 Nissan Rogue and determined that it had been stolen from the Gateway Chevrolet dealership in Fargo, North Dakota. The vehicle had visible front-end damage, though the record does not reflect whether this damage was present before the vehicle entered the lake. A collision center later found damage to the vehicle's front bumper, cooling system, air conditioner, hood, fender, electrical system, front suspension, and restraint systems. Law enforcement believed that Beston received the vehicle earlier in the month from another individual who had stolen several vehicles in the Fargo-Moorhead area. The record does not reflect whether Beston knew the vehicle was stolen.

A federal grand jury charged Beston with one count of theft in Indian country and one count of malicious mischief. Beston entered a guilty plea to the malicious mischief count pursuant to a written plea agreement. The plea agreement contains a promise by the government to make a non-binding recommendation at sentencing that Beston be ordered to pay $16,950 in restitution. Beston acknowledged in the plea agreement that the district court was required to order restitution, and he agreed to pay restitution as may be ordered. Beston also acknowledged and agreed that the district court would order him to make restitution for all loss caused by his conduct.

The plea agreement also contains an express "Waiver of Appeal" provision, which provides:

> Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case . . . and to challenge the conviction or sentence collaterally through post-conviction proceedings . . . . Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein.[1] Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack: Defendant's conviction or sentence . . . [and] any assessment, restitution, or forfeiture order . . . .

R. Doc. 23, at 7. At the change of plea hearing, the district court engaged in a colloquy with Beston about his guilty plea and plea agreement. The district court confirmed that Beston understood that it had to order restitution and that the government had agreed to recommend restitution in the amount of $16,950. The district court also referenced the plea agreement's appeal waiver and confirmed Beston's understanding that he would be "waiving [his] right to appeal in this matter." The district court asked if Beston had "any questions about [his] waiver of [his] right to appeal," and Beston answered no. Beston affirmed that he had read and understood the plea agreement. Beston ultimately entered a guilty plea, which the district court accepted, finding that Beston was aware of the consequences of pleading guilty and that his plea was knowing and voluntary.

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR). The PSR calculated Beston's United States Sentencing Guidelines range as 18 to 24 months imprisonment. The PSR recommended a restitution order totaling $30,845.50, encompassing Motors Insurance Corporation's restitution request of $24,345.50 and Gateway Chevrolet's restitution request of

---

[1]The rights expressly reserved within the plea agreement are not at issue on appeal.

$6,500 (for its $5,000 deductible and $1,500 recovery fee). A victim impact statement attached to the PSR indicated that Motors Insurance Corporation paid Gateway Chevrolet $24,345.50 on its theft-of-vehicle claim.

At the sentencing hearing, Beston objected to the difference between the restitution amounts outlined in the plea agreement and PSR. Beston argued that the PSR restitution amount was based on the value of the vehicle when it was stolen from Gateway Chevrolet and did not represent the actual loss caused by Beston's conduct, which Beston believed to be $16,950. Beston also mentioned the parties' "agreed upon amount" in the plea agreement. In response, the government explained that the plea agreement restitution amount was based on "information that we received from Gateway [Chevrolet] at the time" but "admittedly did not take into account the insurance company or the towing bill. So that's something that's partially my fault and I admit that. But the case law does indicate that victims deserve to be made whole." The government acknowledged Beston's "argument and concerns" but continued to explain why the PSR amount was higher, noting "again I didn't contemplate the insurance company when I wrote in that restitution figure." The government also speculated that, if the stolen vehicle had not been driven into the lake, it would not have been damaged to the same extent. The probation officer then shared that the PSR amount was based on information provided by Gateway Chevrolet to the government. Beston concluded by reiterating that the parties had agreed on the restitution amount of $16,950 in the plea agreement. However, at no point during sentencing did the government recommend the $16,950 amount, and Beston never objected to the government's failure to do so. Ultimately, the district court acknowledged the plea agreement's provision requiring the government to recommend the $16,950 amount but overruled Beston's objection to the PSR restitution amount and ordered $30,845.50 in restitution. The district court also sentenced Beston to 21 months imprisonment and 3 years supervised release.

## II.

Before we can reach the disputed legality of the district court's restitution order, we must determine whether the government breached the plea agreement such that Beston's appeal may proceed. Beston argues that the government breached the plea agreement by failing to recommend the $16,950 restitution amount at sentencing and instead advocating for the higher amount set forth in the PSR. Beston seeks remand for specific performance of the plea agreement. See United States v. Kelly, 18 F.3d 612, 615-16 (8th Cir. 1994) ("When the government fails to fulfill the terms of a plea agreement, an unsatisfied defendant may seek specific performance or may seek to withdraw his plea."). The government denies breaching the plea agreement and asks this Court to dismiss Beston's appeal based on the plea agreement's appeal waiver.

"'If the government breached the plea agreement, [the defendant] may proceed with his appeal despite the appeal waiver.' Accordingly, 'the appeal waiver does not prevent us from reviewing [the] claim that the plea agreement was breached.'" United States v. Brown, 5 F.4th 913, 915 (8th Cir. 2021) (alterations in original) (citations omitted). However, we are limited to plain-error review because Beston failed to object to the government's alleged breach below and instead raises this argument for the first time on appeal. See United States v. Sayles, 754 F.3d 564, 568 (8th Cir. 2014). To prevail on plain-error review, Beston must show: "'"(1) error, (2) that is plain, and (3) that affects substantial rights."' 'If all three conditions are met, we may remedy the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."'" United States v. Lovelace, 565 F.3d 1080, 1087 (8th Cir. 2009) (citations omitted).

We first consider whether the government breached the plea agreement. "When a guilty plea is induced by an agreement, the government must abide by its terms." Id. "[I]n determining whether the government has fulfilled its obligations under a plea agreement, we look to the agreement's provisions." United States v. Kramer, 12 F.3d 130, 131 (8th Cir. 1993). "If the government 'actively advocate[s]

for an outcome different from the one it had promised' to seek, it breaches the plea agreement." United States v. Pierre, 912 F.3d 1137, 1142 (8th Cir. 2019) (alteration in original). Here, Paragraph 18(b) of Beston's plea agreement provides: "At sentencing, the United States will . . . [r]ecommend that Defendant be ordered to pay restitution in the amount of $16,950." At the sentencing hearing, however, the government never made this express recommendation. References by the district court and Beston to Paragraph 18(b) do not excuse the government's missing recommendation. In United States v. Helper, this Court found no plain error breach by the government for failing to reiterate at sentencing its sentencing recommendation contained in a defendant's plea agreement. 7 F.4th 706, 710 (8th Cir. 2021). Helper noted that the district court had twice stated its understanding of the government's recommendation. Id. Helper is distinguishable, however, because it concerned a plea agreement lacking any explicit requirement that the government reiterate its recommendation at the sentencing hearing, unlike Beston's plea agreement. See id. What the government specifically promises in a plea agreement serves as valuable consideration for a defendant's guilty plea, even if the government's promises do not bind the district court. See United States v. Has No Horses, 261 F.3d 744, 750 (8th Cir. 2001) ("[T]he consideration for [defendant's] agreement was the government's recommendation of a reduction for acceptance of responsibility, not that [defendant] would receive such a reduction.").

Further, "taking a holistic view of the [g]overnment's plea-related conduct," Brown, 5 F.4th at 917, the government's comments at sentencing make its failure to abide by its promise inexcusable, as it effectively advocated for the higher restitution amount. The government explicitly disagreed with Beston's reasoning in support of the lower amount. The government claimed to have made a mistake in its calculation of the lower amount and indicated that case law supported the higher amount. The government urges that "a less than enthusiastic recommendation will not ordinarily constitute a breach." United States v. Jeffries, 569 F.3d 873, 876 (8th Cir. 2009). While true, the government nevertheless failed to meet its agreed-upon obligation simply to make the recommendation. See id. The government also emphasizes its duty of candor to the court to justify its reference to case law in support of the higher

amount, but this duty does not excuse the government's lack of "meticulous fidelity to the plea agreement we require." Brown, 5 F.4th at 916. Accordingly, we agree with Beston that the government breached the plea agreement and that its breach satisfies the first two requirements of the plain error test. See Lovelace, 565 F.3d at 1087-88 (explaining that government's breach of plea agreement "satisfies the first two requirements of the . . . plain error test").

We next consider whether the government's breach of the plea agreement affected Beston's substantial rights. See id. at 1088 ("Although the government breached the plea agreement, under the third step of the plain error test [defendant] must show that the breach affects his substantial rights."). Beston "must show a 'reasonable probability, based on the appellate record as a whole, that but for the error he would have received a more favorable sentence.'" Id. (citation omitted). The government actively undermined the lower restitution amount before the district court announced its restitution decision. Not only did the government here fail to make the agreed upon recommendation, but it also gathered information to defeat the plea agreement restitution amount, gave the information to the probation officer, who included it in the PSR, and argued that the district court ought to order a higher amount. While the gathering of information and the sharing of that information with the probation officer and district court alone did not breach the plea agreement, we highlight how the government's gathering and sharing of information accompanied its advocacy of the higher amount as evidence of how the government's breach may have impacted the district court's restitution award.

Even though the government advocated for the higher amount at sentencing, Gateway Chevrolet, Motors Insurance Corporation, and the government all failed to justify the $24,345.50 figure. Neither Gateway Chevrolet nor Motors Insurance Corporation adequately explained how the amount was calculated. The victim impact statement included an "Explanation of Claim Payment," which identified theft of vehicle as the cause of loss, and a "Loss or Damage Statement," which revealed that the net settlement Motors Insurance Corporation paid Gateway Chevrolet was based on the manufacturer's invoice price of the vehicle. However,

-7-

as Beston mentioned at sentencing, he was not being sentenced for theft and his criminal activity occurred after someone else stole the vehicle. The government likewise failed to adequately explain how the $24,345.50 figure was calculated. The government shared that the plea agreement amount "was based upon the figure that Gateway [Chevrolet] informed us was the value of the vehicle," which had a sticker price of $16,950. The government admitted that Motors Insurance Corporation later "com[ing] forward with the $24,000 [wa]s concerning," yet provided no further detail as to why it advocated for the higher amount, apart from the new knowledge that Motors Insurance Corporation had settled a claim for the vehicle's theft. The government offered no explanation for why restitution should be based on Motors Insurance Corporation's claim payment, presumably reflecting the manufacturer's invoice price, rather than the vehicle's sticker price.

The district court never stated that it would have ordered the higher amount regardless of the government's comments at sentencing or promise in the plea agreement to recommend the lower amount. Cf. United States v. Smith, 584 F.3d 1127, 1129 (8th Cir. 2009) ("The district court . . . specifically indicated that the government's hint, if it was one, as to the sentence that it actually preferred had had no influence on the sentence that the court ultimately fixed, and it gave reasons."). The dissent correctly recognizes that the district court was not bound to order the lower amount in the plea agreement "[n]o matter what the prosecutor said," but the dissent underestimates how the district court may have relied on the government's advocacy for the higher amount. We conclude that Beston has shown a reasonable probability exists that the district court would have ordered the lower restitution amount but for the government's breach of the plea agreement.

We agree with Beston that the government's breach "seriously affect[ed] the fairness" of the district court proceedings, thus allowing us to remedy its error. See United States v. Keller, 413 F.3d 706, 710 (8th Cir. 2005) (citation omitted). "Plea agreements are 'an essential component of the administration of justice,' and fairness is presupposed in securing such agreements." United States v. Mitchell, 136 F.3d 1192, 1194 (8th Cir. 1998) (citation omitted). Here, the government's inexcusable

breach of the plea agreement undermined judicial fairness.  We therefore decline to enforce the plea agreement's appeal waiver.

## III.

Beston claims that the district court failed to follow the required process established in the MVRA to calculate a restitution award.  In describing the district court's alleged failure, Beston highlights the lack of evidence presented by the government as to the amount of actual loss caused by his conduct.  We review a district "court's decision to award restitution for abuse of discretion and its findings as to the amount of loss for clear error."  United States v. Clausen, 949 F.3d 1076, 1078 (8th Cir. 2020).  "To the extent the district court interpreted the [MVRA] to determine its obligations in awarding restitution, we review those interpretations de novo."  United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011).  "The government bears the burden of proving the amount of restitution based on a preponderance of the evidence."  Id.

Before we reach the merits of Beston's argument, we address two procedural points raised by the government.  First, aside from the plea agreement's appeal waiver, the government claims that Beston waived his right to challenge the district court's restitution order in a separate provision of the plea agreement.  Paragraph 20 of the plea agreement states in relevant part, "Defendant agrees to pay restitution as may be ordered by the Court.  Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct . . . ."  The government relies on United States v. Lester, which found that a defendant's agreement "to pay any restitution ordered by the District Court" barred his appeal because "a defendant's agreement to pay the restitution that a district court orders is binding."  200 F.3d 1179, 1179 (8th Cir. 2000).  The dissent in Lester posited, "a plea agreement undertaking 'to pay any restitution ordered by the District Court' is not a knowing waiver of the right to appeal an *unlawful* restitution order."  Id. at 1180 (Loken, J., dissenting).  Subsequent cases in this circuit reviewing plea agreements that lack an express agreement to pay "any restitution" reflect the

dissenting view in Lester.  See, e.g., United States v. Polukhin, 896 F.3d 848, 852 (8th Cir. 2018) ("[A] willingness to pay whatever restitution is lawfully ordered is not inconsistent with reserving a right to appeal the lawfulness of a restitution order."); United States v. Hansmeier, 988 F.3d 428, 439 (8th Cir. 2021) (noting plea agreement did not contain promise to pay "any restitution ordered" or restitution "up to" a certain amount).  In contrast to the Lester plea agreement, here, the plea agreement requires Beston "to pay restitution as may be ordered," not "any restitution."  Beston's willingness to pay the ordered restitution was conditioned on the district court ordering restitution for "all loss caused" by his conduct.  Like the defendants in Polukhin and Hansmeier, Beston challenges the lawfulness of the restitution amount ordered, not his obligation to pay restitution, and Paragraph 20 of the plea agreement does not bar our review of this challenge.

The second procedural point that we consider is whether Beston raises his challenge to the restitution award for the first time on appeal due to a failure to timely object below.  The government asks this Court to not consider Beston's argument due to its alleged untimeliness, and if it does, to review for plain error.[2]  See United States v. Hirani, 824 F.3d 741, 751 (8th Cir. 2016) ("Ordinarily, we will not consider an argument raised for the first time on appeal."); United States v. Dozier, 31 F.4th 624, 629 (8th Cir. 2022) ("When a party fails to timely and clearly state the grounds for the objection, the argument is forfeited, and we review only for plain error.").  We disagree, finding that Beston adequately preserved his objection to the higher restitution amount, which encompasses his present argument regarding the district court's failure to follow the MVRA.  Although Beston failed to submit a timely written objection to the PSR, the district court exercised its discretion to consider his oral objection at sentencing to the PSR's contemplated restitution amount.  See United States v. Fogg, 409 F.3d 1022, 1027-28 (8th Cir. 2005) (finding that objection to restitution order was not untimely where defendant made objection at sentencing hearing and district court made ruling on merits).  The district court acknowledged

_____

[2]As discussed in Part II, it is undisputed that Beston never objected to the government's breach of the plea agreement.  The parties disagree, however, as to the scope of Beston's objection regarding the higher restitution amount set in the PSR.

his objection, invited argument from both parties, and ultimately "overrule[d] the objection to the restitution amount." In his objection, Beston clearly informed the district court as to how he believed the amount should be calculated, and his claim now before us reflects the district court's alleged failure to apply his proposed calculation. See Fed. R. Crim. P. 51(b) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take . . . .").

Turning to the merits of Beston's argument regarding the legality of the district court's restitution order, while the parties agree that the MVRA controls, Beston contends that the district court failed to follow the process outlined in the MVRA for calculating a restitution award. The MVRA directs the district court to "determine who all qualifies as a victim, then calculate each victim's actual, provable losses based on a preponderance of the evidence, and finally determine whether the victim should receive the restitution or whether a third party has already provided the victim compensation and is therefore entitled to the restitution." Frazier, 651 F.3d at 905. "Restitution may only be awarded 'for the loss caused by the specific conduct that is the basis of the offense of the conviction.'" United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007) (citation omitted). "[R]estitution 'should be limited to compensation for [the victim's] *actual losses*.'" Frazier, 651 F.3d at 904 (second alteration in original) (citation omitted). In determining the victim's actual loss, the MVRA instructs the district court "as to the point in time when property should be valued": "If the offense resulted in the loss or destruction of property, the victim's actual loss equals 'the greater of . . . the value of the property on the date of the damage, loss, or destruction; or . . . the value of the property on the date of sentencing.'" Id. (alterations in original) (quoting 18 U.S.C. § 3663A(b)(1)(B)(i)). In contrast, "the 'value' of lost property under the MVRA must be determined in the district court's discretion depending on the circumstances of each case." Id.

Upon careful review of the record, we agree with Beston that the district court erred by failing to properly follow the procedure set forth in the MVRA, albeit under the leading of the government. The MVRA denies courts discretion as to "the point in time when property should be valued," requiring that a district court review the value of the property either on the date of damage or the date of sentencing. Id. Because the relevant conduct serving as the basis for Beston's offense was him receiving the stolen vehicle and driving it into the lake, the district court should have considered the value of the vehicle when he received the stolen vehicle and before he drove it into the lake, not when the vehicle was originally stolen from the dealership lot by someone else. The record, however, provides no indication that the district court used these relevant dates when determining the vehicle's value. At sentencing, the government offered no proof of the vehicle's value on the date of damage, and it never cited the controlling statutory provision, § 3663A(b)(1), or explained that the restitution amount should be based on the value as of the date of damage or sentencing. Instead, the only evidence offered by the government was from Gateway Chevrolet's victim impact statement, which included the manufacturer's invoice price, Motors Insurance Corporation's claim payment, Gateway Chevrolet's deductible, and the towing bill. This evidence alone is insufficient to support the conclusion that Gateway Chevrolet's actual loss caused by Beston's conduct equaled $30,845.50.

The government's reliance on the insurance payment as proof of actual loss does not excuse the district court's failure to use the relevant dates in its restitution determination. The MVRA provides "for direct, mandatory restitution to a private insurer where a victim receives compensation for its losses from that insurer." United States v. Schmidt, 675 F.3d 1164, 1168 (8th Cir. 2012). "Although it could be argued the amount of compensation a victim receives from a third party is reflective of actual loss, the value of such information to the district court depends on how the compensation amount was calculated." Frazier, 651 F.3d at 908. "It may be reasonable to assume for restitution purposes that a property insurer's payment of the victim's claim fairly reflected the fair market value of the lost property, but that assumption can be challenged by the victim . . . ." United States

-12-

v. Fonesca, 790 F.3d 852, 855 (8th Cir. 2015). Here, Beston challenges the government's position that the insurance payment represents Gateway Chevrolet's actual loss, and the government offers no evidence that the insurance payment reflects the value of the vehicle when Beston received it or before he drove it into the lake. Ultimately, we conclude remand is appropriate for the MVRA's actual loss formula to be correctly applied in calculating the amount of restitution Beston must pay.

## IV.

For the foregoing reasons, we deny the government's motion to dismiss the appeal, vacate the district court's restitution award, and remand with directions that the case be reassigned to a different judge for further proceedings consistent with this opinion. See Brown, 5 F.4th at 917. We remand the case for resentencing before a different judge "in accordance with the procedure we follow in the event of a government-occasioned breach." United States v. Swisshelm, 848 F.3d 1157, 1161 (8th Cir. 2017). In doing so, "[w]e make clear that this reassignment in no way questions the fairness of the sentencing judge." Brown, 5 F.4th at 917.

LOKEN, Circuit Judge, concurring.

Though I join Part II of Judge Shepherd's opinion, I believe that whether there was a *plain error* breach of the plea agreement is a very close question for the reasons stated in Judge Colloton's dissent. However, as Part III of Judge Shepherd's opinion explains, there is far more to this issue than the prosecutor's mistake in failing to comply with the government's promise to recommend a specific restitution amount.

That mistake may or may not have been inadvertent. Far more inexcusable was the government's encouraging, supporting, and then totally failing to justify claims for a far larger restitution penalty, claims the government then induced the district court to award at sentencing by winking at its promise to advocate the agreed

-13-

$16,950 amount.  One can legitimately ask whether, if Beston had known of the government shenanigans that lay ahead, he would have knowingly and voluntarily agreed to the appeal waiver.

Regarding the victim restitution claims, we are told that Gateway's insurer paid Gateway the manufacturer's list price on the vehicle at the time it was stolen. Though the policy is not in evidence, that would be logical for property insurance that covered an auto dealer's inventory.  But restitution must be limited to the loss *caused by Beston's offense conduct*.  Therefore, it cannot exceed the value of the car on the day Beston received it from the thief (or some other intermediary).  Any decline in the car's list price value before that date, including depreciation or damage on Gateway's lot before it was stolen, is an amount the insurer contracted to pay under its policy.  It is not victim restitution loss.  The government introduced *no* evidence on this issue, and no evidence whether the car had salvage value after Gateway paid a $1500 "recovery fee."  Without such evidence, the government was not entitled to an award greater than the agreed $16,950 amount.

It is well-established that we will "refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice."  United States v. Andis, 333 F.3d 886, 891 (8th Cir. 2003) (en banc).  This is a narrow exception that "will not be allowed to swallow the general rule that waivers of appellate rights are valid."  Id. Enforcing the appeal waiver in this case allows the government to get away with an inexcusably deficient restitution showing that results in imposing a $14,000 obligation on an impecunious defendant at the outset of his 21-month prison sentence for the benefit of a car dealer and insurance company who made no effort to corroborate their claims.  In my view, *this is unjust*.  Judge Colloton asserts categorically that an erroneous restitution award is not a miscarriage of justice.  Our en banc opinion in Andis did not say that, and there are cases suggesting the exception is not *that* narrow, such as Judge Posner's opinion in United States v. Litos, 847 F.3d 906, 910-11 (7th Cir. 2017).  In any event, I conclude for all these reasons that the appeal waiver may not be enforced to bar Beston's claim.  The remand we are ordering is the fair and proper result.

-14-

COLLOTON, Circuit Judge, dissenting.

Appellant Beston knowingly waived his right to appeal the district court's order of restitution. The court excuses the appeal waiver on the ground that the government breached a plea agreement by failing to recommend a restitution amount of $16,950 at sentencing. But defense counsel twice advised the court of the parties' joint recommendation set forth in the agreement, and the court explained that it was fully aware of the government's recommendation. The defense never objected to the government's performance at the hearing. Under those circumstances, Beston has forfeited any claim of breach, and he has failed to show a reasonable probability that the government's strict compliance with the plea agreement would have changed the outcome of the proceeding. Therefore, this court should enforce the appeal waiver and dismiss the appeal.

Beston's plea agreement states that he waived his right to appeal, and that the waiver "includes, but is not limited to, a waiver of all rights to appeal or collaterally attack . . . any assessment, restitution, or forfeiture order." R. Doc. 23, at 7. Beston signed the agreement with the advice of counsel, and the district court confirmed his understanding at a guilty plea hearing. The waiver was knowing and voluntary. *See, e.g.*, *United States v. Seizys*, 864 F.3d 930, 932 (8th Cir. 2017).

Whether or not the district court correctly calculated the restitution amount, Beston waived his right to appeal the order. An allegedly erroneous restitution order is not a "miscarriage of justice" that allows a defendant to avoid a negotiated waiver. *United States v. Schulte*, 436 F.3d 849, 850-51 (8th Cir. 2006) ("If a defendant sentenced erroneously to a lengthy term of imprisonment that was within the statutory range but well beyond that authorized by the former mandatory guidelines could not establish a miscarriage of justice, then we think it would be anomalous to hold that a defendant challenging an order to pay a monetary sum could on that basis avoid an appeal waiver to which he knowingly and voluntarily agreed."). A waiver that applies only when there is no error is no waiver at all. *See United States v. Andis*, 333 F.3d 886, 894-96 (8th Cir. 2003) (en banc) (Arnold, J., concurring) ("To

-15-

be sure, a plea agreement must be entered into knowingly and with a knowledge of the consequences, but that only means, in the present context, that a defendant must know that one of the consequences of his agreement is that he or she will have no recourse to the court of appeals in the event of an error on the part of the district court.").

The court declines to enforce the appeal waiver here because the government breached the plea agreement. To obtain appellate review despite an appeal waiver, however, a defendant who forfeits a claim of breach must show an obvious breach and a reasonable probability that the breach affected the outcome of the proceeding. *United States v. Lovelace*, 565 F.3d 1080, 1086 (8th Cir. 2009). In this case, the government agreed in writing to recommend a particular restitution amount at sentencing, but then failed to make the oral recommendation that was required. When a defendant stands by at the hearing and declines to object, he bears the burden to show a reasonable probability that a less than enthusiastic oral reaffirmation by the government would have made a difference.

Satisfying this burden "is difficult, as it should be." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation omitted). The plain-error rule strikes a "careful balance" between "judicial efficiency and the redress of injustice." *Id*. Relaxation of the burden disrupts that equilibrium and encourages sandbagging by the defense. If this court does not scrupulously require the defense to show a reasonable probability that the government's failure to reaffirm an agreement affected the outcome, then a defendant has little incentive to raise the government's noncompliance in the district court. Where the defense is able to cite a joint recommendation of the parties in support of its position, and the district court is fully aware of the government's written recommendation, a defendant has little to gain by objecting if he can instead remain silent and avoid an appeal waiver. Objecting means that the defense is limited to one bite at the apple: the government almost inevitably will reaffirm the agreement if the issue is raised, and the district court's ruling will be final with any appeal waived. Forfeiture and a relaxed plain-error standard permits two bites: if the district court declines to accept the joint

recommendation of the parties as urged by the defense, then the defendant can avoid the appeal waiver and relitigate the merits of the issue on appeal.

In this case, the government breached the plea agreement by failing at sentencing to recommend restitution in the amount of $16,950. The prosecutor explained that the restitution amount in the agreement "was based upon the figure that Gateway Nissan informed us was the value of the vehicle," but "did not take into account the insurance company or the towing bill." R. Doc. 41, at 7. Her mistake was in failing to state that the government nonetheless continued to recommend the restitution amount to which it had agreed, and in volunteering a disagreement with defense counsel's assessment that $16,950 represented Beston's "contribution to the criminality." *Cf. United States v. Hand*, 913 F.2d 854, 856-57 (10th Cir. 1990) (holding that government did not breach agreement where prosecutor said: "Regarding role in the offense, we again recommend that this defendant receive a reduction for having a minor role in the offense. That was my assessment at that time. The court's well aware of the facts in this case and can make its own conclusion. We've agreed to recommend that, however.").

Beston, however, did not object to the government's position at sentencing, and the district court was fully apprised of the joint recommendation concerning restitution. The court said: "Mr. Beston did acknowledge in paragraph 20 of the Plea Agreement that the Court would be required to order restitution and agreed to pay restitution as ordered by the Court. The amount of restitution that was contemplated per the Plea Agreement was $16,950." R. Doc. 41, at 6. Defense counsel reminded the court that the "amount of $16,000 is the agreed upon amount of the parties in the Plea Agreement representing Count Two." *Id.* at 10. Later in the hearing, defense counsel reiterated: "[T]he parties have agreed on the amount. It's in the Plea Agreement. That is the position of the parties. I certainly understand that the Court is not bound by that determination but that's the parties' figure that they've agreed to." *Id.* at 11. The court responded unequivocally: "I understand that." *Id.* Then, in announcing its decision, the court specifically acknowledged "the recommendation of the United States per paragraph 18 recommending that he

be ordered to pay restitution in the amount of 16,950," but ultimately found that a greater amount of restitution was appropriate. *Id*. at 12-13.

On this record, Beston has failed to meet his burden to show a reasonable probability that the outcome would have been different if the prosecutor instead had orally reaffirmed the written recommendation at the hearing. No matter what the prosecutor said at the hearing, the court was not bound to adopt the restitution amount stated in the plea agreement. The court properly considered all of the relevant evidence, and made clear that its determination to reject the joint recommendation was based on the evidence.

This court recently addressed a comparable situation where a district court "made it crystal clear at sentencing" that it was aware of the government's recommendation in a plea agreement, but nonetheless decided that a different sentence was appropriate. *United States v. Helper*, 7 F.4th 706, 711 (8th Cir. 2021). Under those circumstances, the court said "there is simply no chance that, if [the defendant] had timely objected and government counsel had reaffirmed the government's promise . . ., the outcome of the sentence proceeding would have been different." *Id*. The court attempts to distinguish *Helper* on the ground that the government there was not required to reiterate its recommendation at the sentencing hearing. That is no distinction: the court's alternative prejudice analysis in *Helper* assumed that if the defendant had timely objected, then the prosecutor would have "reaffirmed the government's promise in Paragraph G to recommend a five year sentence." *Id*. There was no showing of prejudice because there was no reasonable probability that the prosecutor's reaffirmation would have affected the outcome. *Id*.; *accord id*. at 712-13 (Kelly, J., concurring in the judgment).

In concluding that Beston has shown prejudice, the court relies on the fact that the district court did not say it would have reached the same outcome if the government had reaffirmed the plea agreement at sentencing. The district court in *Helper* did not make that statement either. Of course, the district court in this case had no reason to make such a statement because Beston did not object to a breach at

the hearing. The court effectively inverts the burden of proof as though the government were required to establish that the forfeited error was harmless, *see United States v. Olano*, 507 U.S. 725, 734 (1993), and even cites a harmless-error decision, *United States v. Smith*, 584 F.3d 1127, 1129 (8th Cir. 2009), in support of its conclusion.

Also problematic is the court's reliance on the United States Attorney's gathering of information from Beston's victims and provision of that information to the probation office and the district court. The government had a duty to consult with victims, 18 U.S.C. §§ 3664(d)(1), 3771(a)(5), and to provide all relevant information to the court. *United States v. Saxena*, 229 F.3d 1, 5-6 & n.1 (1st Cir. 2000). If the government makes a faulty stipulation in a plea agreement based on incomplete information, then the government has an obligation to adhere to the ill-advised agreement, but it has no duty to withhold information that contradicts the stipulation. *Id.* at 7-8; *United States v. Moncivais*, 492 F.3d 652, 664-65 (6th Cir. 2007); *Hand*, 913 F.2d at 856-57.

The court acknowledges that the government's gathering and provision of new information did not violate the plea agreement, but nonetheless relies on those acts to support a conclusion of prejudice. A defendant who fails to object at sentencing, however, must show that the breach itself caused the prejudice. The district court would have received the information from Beston's victims whether or not the government reaffirmed the plea agreement at sentencing, so the influence of that information on the court does not tend to show prejudice from the forfeited error.

Nor does the court's criticism of the victim's loss estimate of $24,345.50 further a conclusion of prejudice. The question is whether Beston has shown a reasonable probability that the government's failure to reaffirm the plea agreement affected the outcome, not whether the district court erred on the merits of the restitution determination. If the district court made an error in determining restitution, the error was not likely due to lack of prosecutorial reaffirmation of the plea agreement at sentencing.

The prosecutor erred at sentencing by failing to reaffirm the government's recommendation on restitution and by volunteering a disagreement with defense counsel's position that the recommended amount appropriately reflected Beston's culpability. But the district court was well aware of the joint recommendation, and the court simply rejected the recommendation after considering all of the relevant facts. Beston forfeited his objection to the government's breach, and he has failed to show a reasonable probability that different performance by the prosecutor at sentencing would have affected the outcome. Therefore, Beston's waiver of his right to appeal is enforceable, and I would dismiss the appeal.

_____