# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2742
_____

United States of America

*Plaintiff - Appellee*

v.

Corey Lynn Flying Bye, Jr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Northern
_____

Submitted: March 16, 2023
Filed: June 2, 2023
[Unpublished]
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Corey Lynn Flying Bye, Jr. pled guilty to one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), pursuant to a plea agreement. Among other benefits, the agreement contained the government's promise that "there w[ould] be no further federal criminal prosecution" for distribution or possession with intent to distribute a controlled

substance. At sentencing, per the district court's[1] request, the government elicited testimony from a witness connecting Flying Bye to a drug-related death during the time he was involved in the conspiracy. Flying Bye objected, arguing that this testimony violated the plea agreement. The district court overruled his objection and sentenced Flying Bye to 125 months' imprisonment. Flying Bye appeals, arguing only that the government breached the plea agreement. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In early January 2021, federal law enforcement officers received information that Flying Bye was distributing methamphetamine on the Standing Rock Indian Reservation and was a person of interest in the drug-related death of Justin Yellow Earrings. On January 7, 2021, officers arrested and questioned Flying Bye. He admitted to distributing methamphetamine. On the same day, officers also interviewed S.U.A., who informed them that, prior to his death, Yellow Earrings had told her that he bought methamphetamine from Flying Bye.

Subsequently, a federal grand jury returned an indictment charging Flying Bye with conspiracy to distribute a controlled substance. Following negotiations, Flying Bye entered into a plea agreement with the government whereby he agreed to plead guilty to the indictment in exchange for, among other benefits, the government's promise that "there w[ould] be no further federal criminal prosecution" for distribution or possession with intent to distribute a controlled substance "between January 1, 2020, and January 7, 2021." The parties also "agreed that no additional promises, agreements, or conditions have been entered into other than those set forth in this agreement, and this agreement supersedes any earlier or other understanding or agreement."

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

Months later, the United States Probation Office released the first draft of its Presentence Investigation Report (PSR) which discussed Flying Bye as a person of interest in Yellow Earrings's drug-related death. The parties' attorneys met to discuss the PSR, and the government stated that it would not seek to link Flying Bye to the death. Shortly thereafter, Flying Bye filed a formal objection to the paragraphs of the draft PSR discussing his possible involvement in the death. The Probation Office then distributed the final PSR, acknowledging Flying Bye's objections but maintaining the PSR as written.

Just days later, the district court issued a memorandum to the parties stating:

> I am very disturbed by the fact that [Flying Bye] is a person of interest in a drug distribution death. His lawyer has objected (although there is apparently no question that he is a "person of interest[,]" apart from the question of whether he is guilty of something). I want to hear from a witness, namely [S.U.A.], as to what she knows about the distribution and death. I will expect the government to make her available.

R. Doc. 31. This memorandum "caused a flurry of activity" among the parties, and the government ultimately decided to abide by the district court's request.

At Flying Bye's sentencing hearing, the government called S.U.A. as a witness. Flying Bye objected, arguing that the government eliciting testimony from S.U.A. violated the plea agreement. The district court overruled his objection, and the government proceeded. In argument following S.U.A.'s testimony, the government stated to the district court, "I do not think I could have proved beyond a reasonable doubt that the meth that Mr. Flying Bye had was what caused the death of Mr. Yellow Earrings. . . . [T]hat is why it wasn't charged."

Ultimately, the district court did not take Yellow Earrings's death into account in fashioning Flying Bye's sentence. Following an extensive analysis, the district court imposed a final sentence of 125 months' imprisonment. Flying Bye now appeals, arguing that "the government breached the plea agreement by eliciting

-3-

testimony from [S.U.A.] at sentencing regarding the drug-related death mentioned in the PSR when the government had previously agreed that it would not seek to link Mr. Flying Bye to the death." Appellant Br. 7.

## II.

"When a guilty plea is induced by an agreement, the government must abide by its terms." United States v. Beston, 43 F.4th 867, 873 (8th Cir. 2022) (citation omitted). And "[w]e review *de novo* questions regarding the interpretation and enforcement of a plea agreement." United States v. Collins, 25 F.4th 1097, 1100 (8th Cir. 2022). "'We generally interpret the meaning of the terms in the agreement according to basic principles of contract law.' This involves 'discern[ing] the intent of the parties as expressed in the plain language of the agreement when viewed as a whole.'" United States v. Thomas, 58 F.4th 964, 971 (8th Cir. 2023) (alteration in original) (citations omitted). We take a "holistic view of the [g]overnment's plea-related conduct," mindful of the constitutional concerns implicated by plea agreements. Beston, 43 F.4th at 874 (alteration in original). While many errors which are alleged to have occurred at sentencing are reviewed for harmless error, see, e.g., United States v. Marin, 31 F.4th 1049, 1056-57 (8th Cir. 2022), such review is unavailable when the government breaches a plea agreement, United States v. Yah, 500 F.3d 698, 704 (8th Cir. 2007).

Here, the government promised that, in exchange for Flying Bye's guilty plea, "there w[ould] be no further federal criminal prosecution" for distribution or possession with intent to distribute a controlled substance. The government argues that this phrase means "that the government would not institute a separate prosecution against Flying Bye for the distribution of a controlled substance in exchange for his guilty plea to the conspiracy offense." Appellee Br. 7. Flying Bye, on the other hand, reads the provision to mean "that there would be no attempt to link [Yellow Earrings's] death to Mr. Flying Bye." Appellant Br. 10. We are more persuaded by the government's reading.

The term "prosecution" is not expressly defined in the agreement, "so we look to its ordinary, natural meaning." Thomas, 58 F.4th at 971. "Prosecution" means "[a] criminal proceeding in which an accused person is tried." Prosecution, Black's Law Dictionary (11th ed. 2019). When combined with the modifier "further," the agreement unambiguously refers to an additional prosecution beyond the one in which Flying Bye agreed to plead guilty. Thus, the government's eliciting testimony from S.U.A. at sentencing—a necessary component of Flying Bye's prosecution for the crime he pled guilty to—did not constitute a "further federal criminal prosecution." Indeed, S.U.A.'s testimony about Yellow Earrings's death merely constituted relevant conduct underlying Flying Bye's prosecution for conspiracy to distribute controlled substances. We also note that, while having no impact on our interpretation of the plea agreement, the district court—not the government—was the driver of this testimony. Thus, we hold that the government did not breach the plea agreement by eliciting S.U.A.'s testimony at sentencing.

III.

For the foregoing reasons, we affirm the judgment of the district court.

ERICKSON, Circuit Judge, concurring.

I agree with the majority's analysis of the plain language of the "no further prosecution" provision in the plea agreement. I write separately to note that defense counsel asserted, which the government did not dispute, that this provision was added to the plea agreement to avoid the scenario that played out at sentencing— that is, consideration of whether Flying Bye distributed drugs that resulted in Yellow Earrings's death. I have concerns about whether the prosecutor's actions in eliciting the testimony contravened the parties' pre-plea agreement bargain to not attempt to link Flying Bye to the overdose death. But, because the plea agreement did not contain a provision that reduced to writing this particular aspect of the plea negotiations, I cannot say under these circumstances that the government failed to fulfill the court's expectation that prosecutors act with "meticulous fidelity to the

plea agreement" that was signed in this case. See United States v. Brown, 5 F.4th 913, 916 (8th Cir. 2021) (endorsing the presentence investigation report's higher than the parties' agreed to calculation, which essentially invited the district court to go on a fishing expedition for additional supporting facts, "was hardly the meticulous fidelity to the plea agreement we require"); United States v. E.V., 500 F.3d 747, 751 (8th Cir. 2007) (explaining the government's breach of a promise that induced a guilty plea violates due process and threatens "the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government").

_____