# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 23-3065**

**September Term, 2023**

FILED ON: APRIL 12, 2024

UNITED STATES OF AMERICA,
>                    APPELLEE

v.

JOSHUA DILLON HAYNES,
>                    APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-594)

---

Before: SRINIVASAN, *Chief Judge*, MILLETT and WALKER, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* D.C. Cir. R. 34(j). The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the district court's restitution order entered May 1, 2023, be **AFFIRMED**.

### I.

### A.

On January 5, 2021, Joshua Haynes traveled to Washington, D.C., to protest Congress's counting of the electoral votes in the 2020 presidential election. Haynes was present at the riot the following day at the United States Capitol, and he unlawfully entered the Capitol building along with many others.

After leaving the Capitol building, Haynes gathered with other rioters near a media staging area on the Capitol grounds. Media personnel fled the scene as the crowd closed in, and the rioters

destroyed media equipment left behind—cameras, lights, tripods, and other paraphernalia. Haynes personally smashed multiple pieces of equipment.

Haynes documented his activities in text messages he sent to associates. Alongside a photo of himself standing in front of the debris, he wrote that "[w]e attacked the CNN reporters and the fake news and destroyed tens of thousands of dollars of their video and television equipment here's a picture of me behind the pile we made out of it." Statement of Offense 5–6, J.A. 33–34. He sent other text messages similarly recounting his conduct: "They had to run away from us and leave all their equipment so we destroyed it"; "i Kicked the fake news ass"; "ahhhhh I liked it too I have already seen a report of it and I am in the video destroying the stuff but I'm wearing a mask"; and "I want to get busted for tearing up the nations capital and the fake news." *Id.* at 6, J.A. 34 (alteration omitted).

## B.

Haynes was charged with eight criminal offenses arising out of his conduct on January 6. He pleaded guilty to two of those charges: (i) Obstruction of an Official Proceeding and Aiding and Abetting the same, in violation of 18 U.S.C. §§ 1512(c)(2) and 2, and (ii) Destruction of Property within Territorial Jurisdiction, in violation of 18 U.S.C. § 1363.

After the district court accepted Haynes's plea, but before sentencing, the government requested that the court order Haynes to pay restitution to the German media organization ZDF to compensate ZDF for equipment Haynes had destroyed. According to the government, its request for a restitution order was based on Haynes's violation of § 1363, an offense that gives rise to mandatory restitution under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A. The government submitted evidence of the damages ZDF sustained, along with evidence that Haynes had caused those damages at least in part.

The district court granted the government's request. The court ordered Haynes to pay ZDF's insurer (which had already compensated ZDF) the dollar equivalent of € 29,989.36, in increments of $20 per month. Haynes now appeals that restitution order.

## II.

Haynes brings three challenges to the restitution order, none of which succeeds. Because Haynes failed to raise those challenges in the district court, our review is governed by the plain-error standard. *See United States v. Baldwin*, 563 F.3d 490, 491 (D.C. Cir. 2009). Indeed, when the district court asked whether Haynes "t[ook] any issue with the legality or the legal basis for the restitution order," Haynes's counsel stated: "Not the legality." Restitution Hr'g Tr. 4:16–18, S.A. 82. And while Haynes contends that he challenged the restitution order's legality in his sentencing memorandum, the memorandum objected to restitution only on grounds of Haynes's indigency, not on the legal grounds he now advances on appeal.

To prevail under the plain-error standard, Haynes must show an error that is plain, that affects his substantial rights, and that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *In re Sealed Case*, 573 F.3d 844, 847–48 (D.C. Cir. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Haynes fails to satisfy that standard.

A.

First, Haynes contends that ordering him to make restitution to ZDF based on his violation of 18 U.S.C. § 1363 was improper because that provision applies to destruction only of federal government property, not private property like ZDF's. We disagree. The district court did not plainly err in concluding otherwise.

Section 1363 makes it a crime to, "within the special maritime and territorial jurisdiction of the United States, willfully and maliciously destroy[] or injure[] any structure, conveyance, or other real or personal property[.]" That language draws no distinction between federal and non-federal property. Rather, the provision applies to "any . . . real or personal property." And "any," we have said, "means any." *Ford v. Mabus*, 629 F.3d 198, 206 (D.C. Cir. 2010). In accordance with § 1363's terms, other courts have understood the provision to encompass the destruction of non-federal property within so-called federal enclaves. *See United States v. Haggerty*, 997 F.3d 292, 294, 297 (5th Cir. 2021) (tribal statue on Indian reservation); *United States v. Beston*, 43 F.4th 867, 871, 877 (8th Cir. 2022) (stolen car on Indian reservation); *United States v. Holley*, 500 F. App'x 632, 633 (9th Cir. 2012) (private residence and car on Indian reservation). What is more, a neighboring provision, 18 U.S.C. § 1361, prohibits "injur[ing] or commit[ting] any depredation against any property of the United States." If § 1363 were similarly limited to federal property, it would accomplish nothing that § 1361 does not.

In arguing to the contrary, Haynes relies on *United States v. Abu Khatallah*, 316 F. Supp. 3d 207 (D.D.C. 2018), *rev'd in part on other grounds*, 41 F.4th 608 (D.C. Cir. 2022). The question in *Abu Khatallah* was whether a violation of § 1363 is a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3), an enhanced penalty provision. *Id.* at 212. In the course of examining that question, the district court noted that, "at a minimum, to be convicted under § 1363 a defendant must have intentionally injured *federal property*, or have attempted or conspired to do so." *Id.* at 213 (emphasis added). Although that observation appears to conceive of § 1363 as concerning the destruction of federal property—as opposed to the destruction of any property located on federal lands—the case did not present the court with the question of whether § 1363 is confined to destruction of federally owned property. The *Abu Khatallah* court thus had no occasion to pronounce on that question and did not purport to engage with that issue or to examine the language of § 1363 in that connection. The court's passing observation about § 1363 thus affords no basis for disregarding the provision's plain terms.

We are also unpersuaded by Haynes's related argument that *Abu Khatallah* demonstrates ambiguity in § 1363, ostensibly meriting the application of the rule of lenity. The *Abu Khatallah*

court's offhand remark about § 1363, as explained, does not purport to have been based on any focused engagement with the question of whether the provision is confined to the destruction of federal property. At any rate, by asserting that the statute is ambiguous so as to implicate the rule of lenity, Haynes undercuts the idea that any error in applying § 1363 to private property in a federal enclave could have been clear enough to amount to plain error.

In sum, it was not plain error for the district court to assume that an offender can violate § 1363 by destroying private property in a federal enclave—exactly what Haynes pleaded guilty to doing.

### B.

Haynes next argues that he in fact did not plead guilty to any offense involving destruction of media equipment. Specifically, he asserts that "the substantive charges to which [he] entered pleas of guilty were completed prior to the time when the non-governmental and privately owned camera equipment was destroyed." Pet. Br. 5.

The record says otherwise. Count Two of the Superseding Indictment, Destruction of Property within Territorial Jurisdiction, in violation of 18 U.S.C. § 1363, to which Haynes pleaded guilty, states:

> On or about January 6, 2021, within the District of Columbia, **JOSHUA DILLON HAYNES**, at a place within the territorial jurisdiction of the United States, namely the United States Capitol Grounds, on land acquired for the use of the United States and under its exclusive jurisdiction, did willfully and maliciously destroy and injure, and attempt to do so, real and personal property, *specifically, equipment from a news media organization*.

Superseding Indictment 2, J.A. 25 (second emphasis added). In addition, as part of his plea agreement, Haynes stipulated that he "picked up and slammed down multiple pieces of equipment that belonged to media outlets." Statement of Offense 5, J.A. 33. And he further stipulated to sending the text messages excerpted above describing that same conduct. He then reaffirmed the truth of these stipulations at his plea hearing. Haynes's plea of guilty to the charged violation of § 1363 thus was predicated on his destruction of media equipment.

### C.

Finally, Haynes maintains that the restitution order was improper because it covers consequential damages, which lie beyond the scope of the Mandatory Victims Restitution Act. It is true that several courts of appeals have concluded that the relevant section of the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A(b)(1)(B), does not permit restitution for consequential damages. *See United States v. Barton*, 366 F.3d 1160, 1167 (10th Cir. 2004) (collecting cases).

But here, the district court did not impose restitution for consequential damages.  Haynes does not dispute that he destroyed ZDF's equipment, and the challenged restitution award covers only the cost of the equipment he destroyed—the very definition of direct, rather than consequential, damages.  While Haynes argues that ZDF's damages are consequential as to his conviction for Obstructing an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), that objection is beside the point.  The restitution award had nothing to do with Haynes's § 1512(c)(2) conviction but instead was imposed solely in connection with his § 1363 conviction.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk